GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendant*
*Memorial Sloan-Kettering Cancer Center*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

HELEN S. KAHANER, for herself and all others similarly situated,

          Plaintiff,

vs.

MEMORIAL SLOAN-KETTERING CANCER CENTER,

          Defendant.

------------------------------------------------X

**DECLARATION OF ROGER PARKER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Case No. 07 Civ. 9626 (NRB/KNF)

ROGER PARKER, pursuant to 28 U.S.C. § 1746, declares that:

1. I am Senior Vice President and General Counsel of Memorial Sloan-Kettering Cancer Center ("MSKCC"), the Defendant in this action. I have served in that capacity since 1998, and have been a corporate officer of MSKCC since 1978. I have personal knowledge of the facts set forth this Declaration, which I submit in support of MSKCC's Motion to Dismiss Plaintiff's Complaint.

2. MSKCC is a private, not-for-profit cancer diagnosis, treatment, and research center located in Manhattan, New York. MSKCC's records indicate that on March 9, 2007, Helen Kahaner, the Plaintiff in this action, underwent inpatient surgery at MSKCC. Several physicians employed by MSKCC, including Harry W. Herr, M.D., Paul H. Dalecki, M.D., Samson W. Fine, M.D., and Robert T. Heelan, M.D., provided services to Plaintiff at that time.

3. Plaintiff's complaint is premised in its entirety on her assertion that MSKCC's billing for the services provided by the four physicians named above is "fraudulent" and "deceptive" because MSKCC did not apply a 10% discount her insurance provider is purportedly entitled to. Plaintiff also asserts that MSKCC is in the debt collection business, and violated the Fair Debt Collection Practices Act ("FDCPA") by falsely billing on behalf of third parties – *i.e.*, the physicians who treated Plaintiff on March 9, 2007. On this set of facts, Plaintiff also alleges that MSKCC violated New York's General Business Law ("GBL") and breached its 'contract' with MultiPlan (a managed care repricing entity).

4. The purpose of my declaration is to demonstrate that all of Plaintiff's claims are meritless. The physicians for whose services MSKCC billed Plaintiff are full time MSKCC employees. MSKCC was billing on its own behalf and is not a debt collector under the FDCPA.

5. Because Plaintiff never paid any part of the charges at issue in this suit, and was never deceived by any bill, she has no damages and no GBL claim.

6. Third, Plaintiff is not a party to MSKCC's arrangement with MultiPlan, and has no standing to bring a contract claim.

## MSKCC's Billing for Physician Services Provided to Plaintiff

7. Only four charges for physician services are at issue in this suit, all related to Plaintiff's inpatient surgery at MSKCC on March 9, 2007:

Dr. Heelan, $45 for reading a chest x-ray;
Dr. Fine, $1,370 for pathology slide reading;
Dr. Herr, $12,365 for partial nephrectomy; and intraoperative ultrasound
Dr. Dalecki: $2,990 for anesthesia.

8. The Hospital electronically billed Plaintiff's health insurance carrier, Assurant Health ("Assurant"), for these charges on March 14 (Dr. Heelan), March 22 (Dr. Fine), March 23 (Dr. Herr), and March 30, 2007 (Dr. Dalecki).

9. On or after July 31, 2007, Assurant issued payment to MSKCC for the charges noted above. After MSKCC posted Assurant's payments, Plaintiff's account had a balance of $4,448.14. Because Assurant did not make full payment on Plaintiff's account, MSKCC billed Plaintiff for the remaining balance. A copy of the statement that MSKCC sent to Plaintiff on or about September 29, 2007 is annexed hereto as Exhibit A.

10. MSKCC's records indicate that Plaintiff and her husband called MSKCC's physician billing department on several occasions to ask about the status of Assurant's payments, and to request a statement of charges. However, MSKCC has no record of Plaintiff or anyone acting on her behalf ever disputing the charges or asking that a 10% discount be applied to her account.

11. Instead, Plaintiff notified MSKCC of the 10% discount issue by filing this federal court class action suit. After receiving the suit, MSKCC, although not legally required to do so, and solely as an accommodation, applied a 10% discount to Plaintiff's account and issued a statement to her reflecting application of this discount, which is annexed hereto as Exhibit B.

12. To date, Plaintiff has not paid MSKCC any part of the charges for the physician services that MSKCC provided to her on March 9, 2007.

The Physicians Who Treated Plaintiff Are MSKCC Employees

13. The four physicians who provided services to Plaintiff on March 9, 2007 are salaried, full-time employees of MSKCC. Copies of these physicians' 2007 W-2 forms are attached as Exhibit C.[1] In the early 1960s, MSKCC implemented an "employed physician" model, under which all physicians authorized to practice medicine at MSKCC are salaried employees of MSKCC. The physicians are compensated by MSKCC. They do not have private practices, and are not permitted to provide services outside of MSKCC without permission of MSKCC management, which permission is rarely granted.

14. The physicians' health insurance, pension plan, vacation pay, support staff, office space, supplies, equipment, and malpractice insurance are all provided by MSKCC.

15. Moreover, the physician billing department is an internal department of MSKCC, staffed entirely by MSKCC employees.

---

[1] Portions of the physicians' W-2 forms relating to salary, taxes, and Social Security numbers – which are not at issue in this action – have been redacted as private, confidential information.

MSKCC's Arrangement With MultiPlan

16.  MSKCC has an arrangement with MultiPlan, an independent managed care repricing organization. The arrangement is based on an unsigned, undated, "Draft"-stamped agreement ("Participating Facility Agreement") dated on or about June 23, 1999, as well as a May 17, 2005 amendment thereto (together, the "MultiPlan Arrangement"). A copy of the MultiPlan 1999 Arrangement is attached as Exhibit D, while the 2005 amendment is attached as Exhibit E.[2]

17.  Under the MultiPlan Arrangement, if a participating insurance carrier pays MSKCC within a certain time period for services provided to an eligible patient, the patient's account is subject to a 10% discount. Originally, this time period was thirty days. *See* Exh. D, p.4, § C.1, C.2; App. A. The May 17, 2005, amendment to the Participating Facility Agreement changed the time period to forty-five days. *See* Exh. E.

18.  Plaintiff contends in this action that MSKCC should have applied the 10% discount from the MultiPlan Arrangement to her account. However, MSKCC's records indicate that Assurant did not pay the charges at issue here until 90 to 120 days after receipt, well beyond the 45-day time period for application of the 10% discount (see ¶¶ 9 and 17, above).

19.  For the above reasons, and those stated is MSKCC's accompanying Memorandum of Law, MSKCC respectfully asks the Court to dismiss this action in its entirety with prejudice.

---

[2] Portions of the Participating Facility Agreement relating to MSKCC's confidential reimbursement rates, which are not at issue in this action, have been redacted.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 29, 2008.

                                                                                                    _/s/ Roger Parker_
                                                                                                     ROGER PARKER