**DRAFT**

# MULTIPLAN, INC.
## PARTICIPATING FACILITY AGREEMENT

THIS AGREEMENT, effective _____ is entered into between MultiPlan, Inc., 115 Fifth Avenue, New York, NY 10003-1004 (MultiPlan) and **Memorial Sloan-Kettering Cancer Center (Memorial), with principal offices located at 633 Third Avenue, New York, NY 10017.**

WHEREAS, MultiPlan represents and is authorized by various organizations and institutions, including employers, third party administrators and other similar entities (Clients), who provide or administer health care insurance pursuant to a benefit plan, Workers' compensation programs, automobile liability coverage, or other programs (Benefit Programs) for covered individuals (Participants) to establish a preferred provider relationship with Memorial as described herein; and

WHEREAS, Memorial wants to provide health care services in accordance with the terms of this Agreement;

THEREFORE, in consideration of the foregoing and of the mutual covenants, promises and undertakings herein and intending to be legally bound hereby, the parties agree as follows:

A. **RESPONSIBILITIES OF MULTIPLAN**

1. **Notification.** MultiPlan agrees to notify its participating Clients that Memorial is participating in the MultiPlan network, and to distribute to its Clients material made available to MultiPlan by Memorial about Memorial's services. MultiPlan and its Clients will use Memorial's name only in rosters and directories and not otherwise, without Memorial's express written consent. Except for the foregoing, MultiPlan may not use the Memorial's name, symbols, trademarks, or service marks, such as they exist now or may later be developed, without the prior written consent of Memorial. In addition, MultiPlan shall furnish Memorial with a complete list of Clients as of the effective date of this Agreement, to be attached as Appendix B, and shall upon request from time to time, furnish Memorial with updated lists of Clients.

2. **Limitations.** MultiPlan does not determine benefits eligibility or availability for Clients' Participants and does not exercise any discretion or control as to Clients' Benefit Program assets, with respect to policy, payment, interpretation, practices, or procedures. MultiPlan is not the administrator, insurer, underwriter, or guarantor Clients' Benefit Programs, and MultiPlan is not liable for the payment of services under Clients' Benefit Programs. Nothing in this Agreement shall be construed as interfering with the freedom of choice of eligible Participants. Client's access to Memorial shall be consistent with this Agreement.

3. **Referrals.** MultiPlan shall maintain a twenty-four hour-a-day toll-free telephone referral system for the purpose of advising Clients and Participants of providers in MultiPlan's Network.. Memorial shall be included in this referral system.

4. **Licensure & Certification.** MultiPlan shall maintain all licenses and certifications required under local and federal law and regulation.

5. **Insurance.** MultiPlan shall maintain Commercial General, Professional Liability, and Directors and Officers insurance in amounts no less than $2,000,000 per claim and $6,000,000 in the aggregate. MultiPlan shall provide certificates upon request.

B. **RESPONSIBILITIES OF MEMORIAL**

1. **Provision of Health Care Services.** Memorial solely shall be responsible for the provision of health care advice and treatment rendered, ordered, or authorized by Memorial, its employees and/or agents, with respect to Participants. Such services shall be provided to Participants, including those covered by Workers' Compensation and auto liability coverage, in accordance with community standards, in the manner in which Memorial renders services to other patients, and without discrimination based on sex, race, color, religion, marital status, sexual orientation, age, ancestry, or national origin. The provision of services shall be subject to Memorial's standards and protocols, available capacity, and Memorial's policy of giving priority to existing patients.

2. **Licensure and Certification.** Memorial shall comply with all laws relating to furnishing health care services to Participants and maintain in effect all permits, licenses and governmental approvals which may from time to time be necessary for that purpose. Memorial shall maintain Medicare certification, as well as accreditation by JCAHO or another acceptable body. Memorial shall deliver to MultiPlan a copy of Memorial's current certificate of accreditation which shall be annexed to this Agreement as Exhibit 1. Memorial agrees to notify MultiPlan within thirty days of any change in compliance with any of these requirements. Memorial shall notify MultiPlan of any pending investigation, action, or sanction against it, any agent and/or any employee, which may materially affect Memorial's ability to perform an obligation under this Agreement, or would otherwise bear on a requirement of this paragraph. Memorial represents and warrants that all employee physicians are licensed and registered to practice medicine in the State of New York and have met Memorial's credentialing standards, which standards meet or exceed those of MultiPlan, annexed hereto as Appendix B.

3. **Utilization.** Memorial shall cooperate with all reasonable utilization management programs administered by Clients or their designees to the extent that such programs are consistent with community standards.

In all cases, Memorial shall be able to rely conclusively on approvals without retroactive denials as long as the resulting claim and related documentation support the basis for the authorization.

4. **Insurance.** Memorial shall maintain professional liability insurance or self-insurance covering Memorial against any claims arising out of the services to be performed hereunder in the minimum amounts required by law or, in the absence of statutory requirements, no less than the amounts shown on Appendix A. Memorial represents and warrants that it has segregated fund to fulfill its obligations hereunder, and is willing to provide MultiPlan a certified financial statement. If the form of insurance is claims made, Memorial warrants and represents that it shall purchase appropriate tail coverage for claims, demands, or actions made in future years for acts or omissions during the term of this Agreement. Memorial shall send MultiPlan a copy of the certificate of insurance on request. Memorial agrees to notify MultiPlan in writing within thirty (30) days of any cancellation, non-renewal or material changes in such coverage.

5. **Grievance Procedures Relating to Patient Care.** Memorial shall maintain procedures for resolving grievances relating to patient care, and shall cooperate with any grievance procedures or programs sponsored by MultiPlan, Clients, or their designees. Memorial will resolve all grievances relating to patient care in accordance with applicable law and its own internal procedures. Memorial will promptly notify MultiPlan of any dispute involving MultiPlan, its Clients, their designees, or Participants. Memorial will cooperate with the grievance policies of MultiPlan, Clients, or designees to the extent said policies are consistent with community standards.

6. **Directory.** Memorial agrees that MultiPlan and/or Clients may use Memorial's name, address, telephone number and type of services or facilities in any printed directory or other roster of participating Memorials.

7. **Credentialing.** Memorial shall be responsible for all credentialing and supervision of physicians and other health care professions providing services at Memorial.

## C. FINANCIAL

1. **Compensation.**

   a. Memorial agrees to accept as payment-in-full for covered services rendered to Participants, the amounts due according to Appendix A. Negotiated rates offered to MultiPlan shall be above any prompt pay discounts offered to the general public or required by law. Except as provided in Section C.1(b) of this Agreement, Memorial shall receive the negotiated rates for all patient care rendered under this Agreement, less any negotiated volume discounts.

Claims not paid within thirty (30) business days of receipt of a clean claim shall be payable at Memorial's full charges, rather than the fee schedule amount in Appendix A. <u>After Janujary 22, 1998, clean claims not paid within forty-five (45) days of receipt by a Client which is subject to the provisions of New York Insurance Law Section 3224-a, shall accrue interest in accordance with the provision of New York Insurance Law Section 3224-a.</u> For purposes of this Agreement, clean claim shall mean a completed UB92 or other standard billing form providing the same information.

b. Notwithstanding the foregoing, with respect to services rendered in connection with Workers' Compensation, no-fault automobile insurance, and/or other coverage for which there is a state-mandated fee schedule, and if fee negotiation is permitted by law and/or regulation in the applicable state.. Memorial will accept the lesser of its negotiated rates or the amount under the applicable state-mandated fee schedule.

2. **Payment.** Memorial shall submit claims to Clients on completed a UB92 or other standard billing form providing the same information, and Clients must make payment to Memorial within thirty (30) business days of receipt of a such claim in order to obtain the benefit of the negotiated rate. Upon request, Memorial shall furnish to Client or MultiPlan, all information reasonably required to verify Memorial's health care services and the charges for such services. Any request by MultiPlan or Clients for information to verify services and charges shall not affect Clients' obligation to pay claims within thirty (30) business days.

3. **Adjustments to Clients' Payments.** Clients' payments due under this Agreement shall be reduced by any applicable deductibles, co-payments, coinsurance. Memorial shall notify Client and MultiPlan of any erroneous claim sent to a Client within sixty days of the date the claim was issued, and of any erroneous payment received within sixty days of the date Client's payment was received. Memorial will use its best efforts to notify Clients promptly after discovering any errors in claims or payments. Memorial reserves the right to bill and collect from Participants any deductibles, copayments, or coinsurance, and as described in C.5., to obtain deposits from Participants in appropriate circumstances.

4. **Disputed Claims.** In the event of a dispute between Memorial and a Client regarding billed amounts, payment due, Client shall have the right, upon written notification of MultiPlan and Memorial about the dispute within sixty days of the date payment was due, to withhold payment pending resolution of the dispute. MultiPlan shall make its best efforts to assist the parties in resolving the dispute. <u>If Memorial has verified eligibility of a Participant with the appropriate Client and received a non-qualified approval in writing from the Client prior to rendering services, the Client may not withhold payment for services rendered on the grounds that, in fact, the Participant was not eligible.</u>

5. **Participant Billings.** Memorial agrees to bill the Participant for appropriate co-payments, deductibles, and coinsurance only in the amount of the difference between the amount due for covered services based on Appendix A, and the sum of the amounts paid by the Clients and

any other payors. Memorial shall not balance bill or attempt to collect compensation from Participants in connection with services covered by Workers' Compensation programs, except as expressly permitted by law. Memorial shall bill a Participant its usual and customary charge for non-covered services provided to a Participant. Memorial also may obtain deposits or other assurances of payment from Participants with respect to non-covered services.

6. **Coordination of Benefits.** Memorial shall cooperate with Clients for purposes of coordinating benefits. When a Client is a primary payor, Memorial shall accept from Client as payment in full for covered services the amounts established in Appendix A, less the appropriate deductibles, co-payments and coinsurance. When a Client is a secondary payor, Memorial shall accept from Client as payment for covered services the difference between the amount set forth in Appendix A, less the sum of the amount paid by the primary payor(s) and the appropriate deductibles, co-payments and coinsurance.

7. **Audit.** Upon fifteen business days' written notice, each party shall have the right to audit the other's records pertaining to compensation under this Agreement for a period of six months prior to the date of the notice of audit. In addition, either party shall be afforded the right to request copies of records pertaining to compensation under this Agreement. Copying charges shall be $1.00 per page.

8. **Survival.** The rights and obligations set forth in this section C shall survive termination until such time as the mutual affairs of the parties pursuant to this Agreement have been completed.

### D. TERM AND TERMINATION

1. **Term.** This Agreement shall become effective upon execution by both parties. The initial term of this Agreement shall be one year from the effective date, and the Agreement shall continue in effect for successive one year periods unless terminated as set forth below.

2. **Termination.** Either party may terminate this Agreement by giving no less than ninety (90) days advance written notice, mailed to the other party by certified or registered mail.

3. **Automatic Termination** This Agreement shall terminate automatically and immediately a) in the event MultiPlan or Memorial commits any act or conduct for which its license(s), permit(s), or any governmental or board authorizations or approval as necessary for business operations and to provide services contemplated by this Agreement are lost or voluntarily surrendered; b) in the event MultiPlan or Memorial makes any material misstatements or omissions on any documents which they submit to each other; c) in the event MultiPlan's or Memorial's liability insurance coverage as required by this Agreement lapses for any reason; d) in the event Memorial or MultiPlan determines termination to be necessary to protect the health, safety, or welfare of Participants or other patients of Hospital; e) in the event either Memorial or MultiPlan is indicted or convicted of a felony; f) in the event of a material change

in law affecting the benefits or burdens of the Agreement. Further, this Agreement shall terminate automatically and immediately with respect to any Client of MultiPlan upon the occurrence of any of the events described in (a) - (f) of this provision.

4. **Effect of Termination.**

   a. Termination shall have no effect upon the rights and obligations of Memorial, MultiPlan, or Clients arising out of any transactions occurring prior to the effective date of such termination. Termination shall not release Memorial from its obligation to complete treatment of persons then receiving treatment in accordance with the dictates of medical prudence, or the obligation of MultiPlan's Clients to compensate Memorial for such services in accordance with the terms of this Agreement.

   b. When this Agreement terminates, neither Memorial, MultiPlan, nor Clients of MultiPlan will engage in any activity which implies a continuing relationship with respect to the persons or services covered by this Agreement. Further, upon termination, MultiPlan will take steps to notify Clients and Participants that MultiPlan's relationship with Memorial respecting covered services under this Agreement has terminated. MultiPlan and its Clients will take steps to remove any references to Memorial in MultiPlan's and Clients' directories, rosters, and marketing materials relative to this Agreement.

E. **MISCELLANEOUS**

1. **Independent Contractors.** Each party, including its officers, directors, employees and agents, acts as an independent contractor. Neither party has express or implied authority to assume or create any obligation on behalf of the other. The parties shall maintain a cooperative relationship in order to effectuate this Agreement.

2. **Indemnification.** Each party solely is responsible for its own actions or omissions, and those of its officers, directors, employees and agents, arising in connection with obligations created under this Agreement, including Memorial's rendering professional advice and/or treatment. Each party shall hold the other, including its officers, directors, employees, agents, successors and assigns, harmless from and against all claims, liability, damages, and expenses, including reasonable attorneys' fees, which may be alleged against or incurred by the other party and are the result of any act or omission in connection with this Agreement.

3. **Severability and Waiver.** The waiver by either party of any breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach of the same or any other provision. The failure to exercise any right hereunder shall not operate as a waiver of such right. The finding by a court of competent jurisdiction that any provision herein is void shall not void any other valid provision of this Agreement.

4. **Confidentiality and Disclosure.**

   a. The parties shall comply with all applicable laws and regulations regarding maintenance and disclosure of Participants' medical records. The names of MultiPlan's Clients shall be kept confidential and shall not be used except as necessary to implement this Agreement.

   b. Neither party shall disclose the negotiated rates and/or the compensation payable to Memorial pursuant to the terms of this Agreement, except as may be required in order to comply with this Agreement, or to the extent required by applicable law. In addition, MultiPlan, in its discretion, may release such information to Clients and potential clients as MultiPlan may reasonably determine is required in connection with marketing its products.

   c. MultiPlan and Clients may include Memorial's name, address, telephone number, practice specialties, in its directories of participating Memorials. The use of Memorial's name is subject to the provisions of Paragraph A.1 of this Agreement.

5. **Notices.** Any notice required to be given pursuant to this Agreement shall be in writing and delivered by hand, by certified mail/return receipt requested, or by facsimile confirmed with overnight delivery, to the signatories, or their successors if any, at the addresses set forth below.

   **Memorial Hospital for Cancer and Allied Disease**
   1275 York Avenue
   New York, New York 10021

   Attention:   John Gunn, Executive Vice President
   Clarice Albright, Hospital Administrator
   Michael Gutnick,, Senior Vice President, Finance

   **MultiPlan, Inc.**
   115 Fifth Avenue
   New York, New York 10003-1004

   Attention:   Donald Rubin, Chairman

6. **Modification.** This Agreement, together with Appendix A and Exhibit 1, constitute the entire agreement between the parties with respect to the subject matter hereof, and as of the date this Agreement is executed by both parties, shall supersede any previous agreements or understandings, written or oral, between the parties. Any modifications to the Agreement shall be in writing and signed by both parties.

7. **Assignment.** This Agreement shall not be assigned, delegated or otherwise transferred by either party without the prior written approval of both parties. Any other attempt at assignment shall be void.

masters\cntr\facility 4/30/97
bpcntony/sdaniels 12/29/97 3/20/98

7

8. **Governing Law.** This Agreement shall be governed by the laws of the state in which Memorial is licensed to operate.

9. <u>The terms of this Agreement and the respective rates are not applicable to foreign clients including employers, insurance carriers, third party administrators, or other similar entities as defined in the introduction of this Agreement. The rates incorporated into this Agreement are also not applicable to managed care clients including HMOs licensed to operate or have a network of hospital providers in New York City, Nassau, Suffolk, and Westchester Counties in New York and Bergen, Hudson, Passaic, and Union Counties in New Jersey.</u>

IN WITNESS HEREOF, the parties have executed this Agreement.

**MultiPlan, Inc.**
115 Fifth Avenue
New York, New York 10003-1004

**Memorial Sloan-Kettering Cancer Center**
633 Third Avenue
New York, New York 10021

By:_____    date
    Donald Rubin
    Chairman

By_____    date
Signature

_____
Print Name/Title

Principal Address:     1275 York Avenue
                                   New York, NY 10021

Federal Tax I.D.#:_____

# MULTIPLAN, INC.
## PPO PARTICIPATING FACILITY AGREEMENT
## APPENDIX A

A. **Fee Schedule**

For covered inpatient and outpatient services rendered to Participants including those covered by Workers' Compensation and No Fault Automobile Liability coverage, Memorial agrees to accept as payment in full the amounts set forth below.

**Inpatient Services**

REDACTED

**Outpatient Services**



REDACTED

**Physician Services**

10% less than reasonable and customary charges.

**Bone Marrow Transplants Case Rates**

REDACTED

REDACTED

**Note**

All rates are exclusive of any applicable taxes, pool, GME and rate add-ons, and are subject to regulatory approvals, if any.

B. **Licensure**

Memorial is licensed in the **STATE OF NEW YORK**.

C. **Accreditation**

Memorial is accredited by:

JCAHO_____ accreditation period ending _____

Other (specify):_____ accreditation period ending _____

(Certificate attached as Exhibit 1)

D. **Insurance**
Memorial shall maintain malpractice insurance no less than the following amounts:

$_____ per occurrence ; $_____ annual aggregate.

Carrier _____.

**MULTIPLAN, INC.**
**PPO PARTICIPATING FACILITY AGREEMENT**
**Exhibit 1**
**CERTIFICATE OF ACCREDITATION**
(cover sheet)

# APPENDIX B