UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

HELEN S. KAHANER, for herself and
all others similarly situated,

                          Plaintiff,

      vs.

MEMORIAL SLOAN-KETTERING CANCER
CENTER,

                          Defendant.

Case No.: 07 Civ. 9626 (NRB/KNF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Garfunkel, Wild & Travis, P.C.
*Attorneys for Memorial Sloan-Kettering Cancer Center*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

Of Counsel:
   Leonard M. Rosenberg
   Philip C. Chronakis

## Table of Contents

Table of Authorities ................................................................................................ iv

PRELIMINARY STATEMENT .......................................................................... 1

PROCEDURAL HISTORY ................................................................................. 5

STATEMENT OF FACTS ................................................................................... 6

    Plaintiff's Treatment At MSKCC ................................................................... 6

    MSKCC's Attempts To Collect Payment For Healthcare
    ServicesProvided To Plaintiff ......................................................................... 6

    The MultiPlan Arrangement ........................................................................... 7

ARGUMENT ........................................................................................................ 9

    POINT I

        PLAINTIFF'S FAIR DEBT COLLECTION PRACTICES ACT
        CLAIM SHOULD BE DISMISSED BECAUSE MSKCC IS NOT
        A "DEBT COLLECTOR" UNDER 15 U.S.C. § 1692a(6) ...................................... 9

        A.    The Fair Debt Collection Practices Act Does Not Apply To
            A Creditor Collecting Bills On Its Own Behalf ......................................... 9

        B.    Because MSKCC Was Seeking Reimbursement On Its
            Own Behalf, It Is Not A Debt Collector Under The FDCPA .................. 11

            1.    Hospitals Billing Under Their Own Name Are Not
                Subject To The FDCPA ............................................................. 11

            2.    MSKCC Was Collecting Bills On Its Own Behalf
                And Under Its Own Name ......................................................... 13

            3.    Plaintiff's Commencement And Perpetration Of
                This Suit Is Sanctionable ........................................................... 15

    POINT II

        PLAINTIFF'S GENERAL BUSINESS LAW CLAIM MUST BE
        DISMISSED BECAUSE PLAINTIFF HAS NOT ESTABLISHED
        THE REQUISITE ACTUAL INJURY OR MATERIALITY
        PURSUANT TO GBL § 349(a) ........................................................................ 17

i

A.    A Plaintiff Must Allege Actual Injury, Separate From A
Deceptive Business Practice, To Sustain A Claim Under
GBL § 349(a) ............................................................... 17

    1.    Plaintiff Must Allege That She Was Actually
Injured ............................................................... 17

B.    Plaintiff Has Not Successfully Pled Actual Harm, And
Therefore May Not Maintain A Cause Of Action Under
GBL § 349(a) ............................................................... 19

    1.    Plaintiff Conflates The Alleged Deception With The
Alleged Injury ................................................... 19

    2.    Plaintiff Has Not Been Injured Under Any Of The
Facts Alleged In The Complaint ......................... 19

    3.    Plaintiff Cannot Satisfy The Actual Injury Prong
Merely By Claiming That She Contacted MSKCC ..... 20

C.    Plaintiff Cannot Establish A Material Deception, And
Therefore May Not Maintain A Cause Of Action Under
GBL § 349(a) ............................................................... 21

POINT III

PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE
DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED
CONTRACT DAMAGES, LACKS STANDING TO ASSERT
THE CLAIM, AND CANNOT DEMONSTRATE BREACH ............. 23

A.    Plaintiff Has Not And Cannot Plead Damages Flowing
From the Alleged Breach Of The MultiPlan Arrangement ...... 23

B.    Plaintiff Lacks Third-Party Beneficiary Status Under The
MultiPlan Arrangement ................................................. 24

    1.    Assurant's Rights Under The MultiPlan
Arrangement Preclude The Plaintiff From Claiming
Third-Party Beneficiary Status ......................... 24

    2.    Plaintiff Is Merely An Incidental Beneiciary Of The
MultiPlan Arrangement ..................................... 25

C.    Under The Specific Terms Of The MultiPlan Arrangement,
MSKCC Provides A 10% Discount Only If Payment Is
Received Within 45 Days; Assurant's Payments Were
Made From 90 To 120 Days After Receipt ...................... 27

831155v.11

POINT IV

IF NOT DISMISSED ON THE MERITS, PLAINTIFF'S STATE
LAW CLAIMS SHOULD BE DISMISSED ON
JURISDICTIONAL GROUNDS ........................................................................ 28

A.    The Court Should Dismiss Plaintiff's State Law Claims
      Pursuant To § 1367(c)(3) .......................................................................... 28

B.    The Court Should Dismiss The State Law Claims Pursuant
      To The Class Action Fairness Act ............................................................ 28

      1.    Mandatory Dismissal Under CAFA ............................................... 28

      2.    Discretionary Dismissal Under CAFA ........................................... 29

      3.    Plaintiff's State Law Claims Are Subject To
            CAFA's Mandatory And Discretionary Dismissal
            Provisions ........................................................................................ 29

CONCLUSION ............................................................................................................ 31

# Table of Authorities

**Page(s)**

## FEDERAL CASES

*Backuswalcott v. Common Ground Community HDFC, Inc.,*
    104 F.Supp.2d 363 (S.D.N.Y. 2000)................................................................... 10, 15

*Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.,*
    612 F.Supp. 134 (S.D.N.Y. 1985)....................................................................... 23, 27

*Bildstein v. Mastercard Int'l Inc.,*
    329 F.Supp.2d 410 (S.D.N.Y. 2004)............................................................. 17, 18, 21

*Blanc v. Palisades Collection, LLP,*
    2007 WL 3254381 (S.D.N.Y. 2007).......................................................................... 9

*Bleich v. Revenue Maximization Group, Inc.,*
    239 F.Supp.2d 262 (E.D.N.Y. 2002) ................................................................ *passim*

*Boule v. Hutton,*
    328 F.3d 84 (2d Cir. 2003)....................................................................................... 17

*Carlson v. Long Island Jewish Medical Center,*
    378 F.Supp.2d 128 (E.D.N.Y. 2005) ........................................................... 10, 12, 13

*Feick v. Fleener,*
    653 F. 2d 69 (2d Cir. 1981)....................................................................................... 8

*In re Evergreen Mut. Funds Fee Litigation,*
    423 F.Supp.2d 249 (S.D.N.Y. 2006)......................................................................... 17

*Kolari v. New York-Presbyterian Hosp.,*
    382 F.Supp.2d 562 (S.D.N.Y. 2005).......................................................................... 11

*Kropelnicki v. Siegel,*
    290 F.3d 118 (2d Cir. 2002)....................................................................................... 9

*Maguire v. Citicorp Retail Services, Inc.,*
    147 F.3d 232 (2d Cir. 1998)............................................................................... 6, 10

*Mattera v. Clear Channel Communications, Inc.,*
    239 F.R.D. 70 (S.D.N.Y. 2006) ......................................................................... 29, 30

*Newman v. RCN Telecom Services, Inc.,*
    238 F.R.D. 57 (S.D.N.Y. 2006)................................................................................ 17

iv

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994) ............................................................................ 23

*Trikas v. Universal Card Services Corp.*,
    351 F.Supp.2d 37 (E.D.N.Y. 2005) ......................................................... 20, 24

*United Mine Workers v. Gibbs*,
    383 U.S. 715 (1966) ...................................................................................... 28

### STATE CASES

*Artwear, Inc. v. Hughes*,
    615 N.Y.S.2d 689 (1st Dep't 1994) ............................................................. 25

*Batas v. Prudential Ins. Co. of America*,
    831 N.Y.S.2d 371 (1st Dep't 2007) ............................................................. 19

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
    66 N.Y.2d 38 (1985) ........................................................................... 24, 25, 26

*Gordon v. Dino De Laurentiis Corp.*,
    529 N.Y.S.2d 777 (1st Dep't 1988) ............................................................. 23

*Goshin v. Mutual Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) ............................................................................... 18, 19

*Milan Music, Inc. v. Emmel Communications Booking, Inc.*,
    829 N.Y.S.2d 485 (1st Dep't 2007) ............................................................. 23

*Small v. Lorillard Tobacco Co., Inc.*,
    679 N.Y.S.2d 593 (1st Dep't 1998) ............................................................. 17

*Small v. Lorillard Tobacco Co., Inc.*,
    94 N.Y.2d 43 (1999) ..................................................................................... 18

*State of California Public Employees' Retirement System v. Shearman & Sterling*,
    95 N.Y.2d 427 (2000) ............................................................................... 24, 26

*Stutman v. Chemical Bank*,
    95 N.Y.2d 24 (2000) ..................................................................................... 17

*Wasserman v. Weisner*,
    234 N.Y.S.2d 128 (N.Y. Sup. Ct. New York Cty. 1962) ............................. 27

831155v.11

## FEDERAL STATUTES

15 U.S.C. § 1692 .................................................................................................... 9

15 U.S.C. § 1692a ........................................................................................ 9, 10, 15

28 U.S.C. § 1332 ............................................................................................ 4, 28, 29

28 U.S.C. § 1367 ................................................................................................ 4, 28

FED. R. CIV. P. 12(b)(6) .......................................................................... 1, 5, 8, 22, 23

## STATE STATUTE

N.Y. GEN. BUS. § 349 .......................................................................... 3, 17, 18, 20, 22

## PRELIMINARY STATEMENT

Defendant, Memorial Sloan-Kettering Cancer Center ("MSKCC"), brings this motion to dismiss the claims of Plaintiff, Helen S. Kahaner, brought both individually and on behalf of a purported class of plaintiffs. As demonstrated below, all of Plaintiff's claims – brought under the Fair Debt Collection Practices Act, New York's General Business Law, and for breach of contract – fail to state a claim against MSKCC as a matter of law. Accordingly, these claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On March 9, 2007, Plaintiff underwent inpatient surgery to remove a benign tumor on her kidney. MSKCC billed Plaintiff's insurance company, Assurant, for the health care services provided to Plaintiff. After receiving payments from Plaintiff's insurance carrier, MSKCC submitted bills to Plaintiff totaling $4,448.14, for the balance of the charges that were not paid by Assurant.

Plaintiff believed the charges were not correct, because they did not reflect a 10% discount ($1,677) that Plaintiff believed Assurant was entitled to. Plaintiff did not bring this purported mistake to the attention of MSKCC. Plaintiff did not ask MSKCC to apply a 10% discount to her charges. Plaintiff did not pay any part of the charges, even the $2,771.14 not in dispute. Instead, in August, 2007, she asked only for a breakdown of the charges and insurance payments (which MSKCC promptly supplied), and two months later commenced this federal class action suit against MSKCC.

On this set of facts, Plaintiff alleged in paragraph 1 of her Complaint that MSKCC has "deceptively and unlawfully inflated doctor bills and other charges to patients," and thus has violated the Fair Debt Collection Practices Act ("FDCPA") which "prohibits debt collectors from

1

831155v.11

On this set of facts, Plaintiff alleged in paragraph 1 of her Complaint that MSKCC has "deceptively and unlawfully inflated doctor bills and other charges to patients," and thus has violated the Fair Debt Collection Practices Act ("FDCPA") which "prohibits debt collectors from engaging in abusive, deceptive, and unfair practices," and that MSKCC "unlawfully took and continues to take undue advantage of those that seek out its expertise and help in fighting the deadliest cancers." *See* Declaration of Leonard M. Rosenberg, Esq., dated February 29, 2008 ("Rosenberg Decl.") at Exh. A (the "Complaint").

Plaintiff further alleges that "In the course of its debt collection business, Sloan-Kettering repeatedly and persistently engaged in fraudulent, deceptive and illegal practices aimed, *inter alia*, at inducing Plaintiff...to pay monies not owed." *Complaint* at ¶ 24.

The only "abusive, deceptive, and unfair practice" that has occurred in this scenario is Plaintiff's filing of this patently meritless class action suit, with inflammatory, disparaging allegations, without having performed a basic fact investigation or research that would have quickly revealed the legal insufficiency of the claims asserted, all for the apparent purpose of generating class action litigation and attorneys' fees.

Plaintiff's FDCPA claim does not dispute MSKCC's billing for hospital services. Evidently, Plaintiff and her counsel are well aware that the FDCPA applies only to debt collectors, and that those who seek to collect debts owed to them are not debt collectors unless they bill under a different name; accordingly, case law is clear that hospitals who bill directly for their services are not debt collectors under the FDCPA. Instead, Plaintiff premises her entire FDCPA claim on the allegation that MSKCC billed in its name for services provided to plaintiff by physicians "who arranged for Sloan-Kettering to bill for their services." *Id.* at ¶ 15.

2

Rudimentary investigation would have revealed that MSKCC changed to an employed physician model in the 1960's, and the four physicians for whose services MSKCC billed plaintiff were all MSKCC employees who have no private practice and are compensated solely by MSKCC. Not only did Plaintiff fail to seek that information prior to commencing this meritless suit, she and her counsel blithely disregarded MSKCC's pre-motion conference letter, advising that the FDCPA claim was deficient because the physicians are MSKCC employees, contending, without basis in fact or law, that the physicians are "independent contractors" who render bills through a third party. Plaintiff's assertion is wrong and frivolous.

Plaintiff's New York General Business Law ("GBL") claim is similarly defective and should be dismissed. A claimant under GBL § 349 must demonstrate "actual injury" that is separate from the defendant's alleged deceptive practices. Plaintiff's Complaint does not articulate any actual injury beyond MSKCC's allegedly deceptive billing practices. Numerous decisions of this Court, the Second Circuit, and New York State appellate courts hold that a plaintiff's failure to allege actual injury separate from a deceptive practice requires dismissal of a claim under GBL § 349. Plaintiff has also not successfully pled that the allegedly deceptive practice was materially misleading in a way that it impacted consumer choice. Accordingly, Plaintiff's General Business Law claim should be dismissed as a matter of law.

Plaintiff's breach of contract claim against MSKCC fails as a matter of law for three reasons. First, Plaintiff does not and cannot allege that she was damaged by the supposed breach of the arrangement between MSKCC and MultiPlan, an independent repricing entity. Her Complaint confirms that she neither made payment on MSKCC's bills at issue in this litigation, nor sought to have them adjusted. A breach of contract claim lacking the requisite element of damages must be dismissed as a matter of law.

3

Second, Plaintiff is not a party to the arrangement between MSKCC and MultiPlan that addresses the 10% discount that Plaintiff contends should apply to her account. Plaintiff must demonstrate third-party beneficiary status under that arrangement to assert any rights thereunder. Two holdings by the New York State Court of Appeals confirm that Plaintiff does not have third-party beneficiary status under that agreement. For this reason, she has no standing to allege a breach of contract claim against MSKCC.

Finally, even if Plaintiff could raise a breach of contract claim against MSKCC, it would fail as a matter of law because the alleged 10% discount did not apply to Plaintiff's account under the express terms of that arrangement. In order for the MultiPlan 10% discount to apply, an insurance carrier must make a payment on an account within 45 days of receipt of MSKCC's bill. In this case, Plaintiff's insurance carrier did not make its payment on her account within the 45 days, thus rendering the 10% discount inapplicable. Thus, there was no breach of the agreement between MSKCC and MultiPlan related to the 10% discount, and Plaintiff's contract claim fails as a matter of law.

Moreover, if the Court dismisses Plaintiff's FDCPA claim but not the supplemental state law GBL and contract claims, pursuant to 28 U.S.C. § 1367, the Court should decline to exercise supplemental jurisdiction over those claims. Further, the provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d), compel dismissal of these claims, which fall under both the mandatory and discretionary dismissal provisions of that statute. For these reasons, if the Court does not dismiss Plaintiff's GBL and breach of contract claims as a matter of law, it should decline to exercise jurisdiction over them.

4

## PROCEDURAL HISTORY

On October 30, 2007, Plaintiff filed the instant Complaint against Memorial Sloan-Kettering Cancer Center, alleging claims under the Fair Debt Collection Practices Act, the New York General Business Law, and for breach of contract.

By letter dated January 11, 2008, MSKCC sought leave to file a motion to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6) ("Rule 12(b)(6)"). *See Rosenberg Decl.* at Exh. B.   By letter dated January 22, 2008, Plaintiff responded to and opposed MSKCC's proposed motion to dismiss, and asked the Court to authorize pre-motion discovery. *Id.* at Exh. C.   On January 25, 2008, the Court granted MSKCC's request and denied Plaintiff's request for pre-motion discovery.

5

## STATEMENT OF FACTS

### Plaintiff's Treatment At MSKCC

MSKCC is a not-for-profit cancer treatment and research center located in Manhattan. *Complaint* at ¶ 4. Plaintiff, Helen S. Kahaner, is a resident of South Carolina. *Id.* at ¶ 3.

In early 2007, Plaintiff received inpatient healthcare services at MSKCC for treatment of a kidney tumor. *Id.* The four Hospital physicians who provided services to Plaintiff are employees of MSKCC. *See* Declaration of Roger Parker dated February 29, 2008 ("Parker Decl.") at ¶¶ 4, 13-15, Exh. C.

### MSKCC's Attempts To Collect Payment For Healthcare Services Provided To Plaintiff

At all times relevant to this action, Plaintiff was insured through Assurant Health ("Assurant"), a Wisconsin-based insurance company. *Complaint* at ¶ 13. Plaintiff provided MSKCC with her medical insurance information, including the name, address, and telephone number of Assurant as her insurer, as well as her account number. *Id.* at ¶ 14.

MSKCC submitted bills to Assurant seeking payment for the medical services provided (the "Statements"). *Parker Decl.* at ¶ 8. Only four charges for physician services are at issue in this suit, all related to Plaintiff's inpatient surgery at MSKCC on March 9, 2007:

> Dr. Heelan, $45 for reading a chest x-ray;
> Dr. Fine, $1,370 for pathology slide reading;
> Dr. Herr, $12,365 for partial nephrectomy and intraoperative ultrasound; and
> Dr. Daleck: $2,990 for anesthesia.

6

MSKCC billed Assurant electronically for these charges on March 14 (Heelan), March 22 (Fine), March 23 (Herr), and March 30, 2007 (Daleck). Assurant did not issue payments to MSKCC for those charges until July 31, 2007. *Parker Decl.* at ¶ 9. After Assurant's payments were posted, $4,448.14 remained due on Plaintiff's account. *Id.* Accordingly, MSKCC billed Plaintiff for those charges. *Id.*

On or about August 17, 2007, Plaintiff sent MSKCC a letter requesting a breakdown of all charges and insurance payments to her account. Plaintiff did not request that MSKCC apply a 10% discount. *Id.* at ¶ 10. MSKCC sent Plaintiff a revised statement on September 29, 2007 that reflected a balance of $4,448.14 after Assurant's payment was applied. *Id.* at ¶ 9, Exh. A. Instead of disputing the statement or asking MSKCC to apply the purported 10% discount, Plaintiff commenced this class action suit.

## The MultiPlan Arrangement

Plaintiff alleges that under her insurance contract with Assurant, MSKCC's services are subject to a 10% price reduction, pursuant to a contract between Assurant and MultiPlan, an independent, cost management solutions company. *Complaint* at ¶ 16. According to the Complaint, MultiPlan has another agreement with participating medical providers, including MSKCC, through which MultiPlan reprices claims based upon the 10% price reduction contained in the contract between Assurant and MultiPlan. *Id.*

7

The "contract" between MultiPlan and MSKCC referenced in the Complaint[1] is an arrangement between MSKCC and MultiPlan. *Parker Decl.* at ¶ 16, Exh. D ("Participating Facility Agreement").[2]  The arrangement is based on an unsigned, undated, "Draft"-stamped agreement that may have become effective on or about June 23, 1999, as well as a 2005 amendment (together, the "MultiPlan Arrangement").[3]

The MultiPlan Arrangement provides that the 10% discount applies if an insurer pays MSKCC's claim within a certain time period, which was originally thirty days. *Participating Facility Agreement* at p. 4, § C.1, C.2, Appendix A.  A May 17, 2005 amendment to the Participating Facility Agreement changed the thirty day period to forty-five days. *Parker Decl.* at ¶ 17, Exh. E.

Assurant's payments to MSKCC for the physician charges at issue in this suit were not made within the forty-five day period established in the MultiPlan Arrangement. *Id.* at ¶ 18.

---

[1] On a motion to dismiss, if the underlying documents to which the complaint refers directly contradict the allegations, the court need not accept the allegations as true, but may dismiss the claim. *See* FED. R. CIV. P. 12(b)(6); *Feick v. Fleener*, 653 F. 2d 69, 75 (2d Cir. 1981).

[2] Certain confidential portions of this document have been redacted.  These portions concern MSKCC's reimbursement rates from MultiPlan, which are not at issue in this litigation.

[3] While MSKCC reserves its right to challenge the enforceability of the MultiPlan Arrangement, it will assume, solely for purposes of this motion, that the MultiPlan Arrangement constitutes an enforceable agreement.

8

**ARGUMENT**

**POINT I**

**PLAINTIFF'S FAIR DEBT COLLECTION PRACTICES ACT
CLAIM SHOULD BE DISMISSED BECAUSE MSKCC
IS NOT A "DEBT COLLECTOR" UNDER 15 U.S.C. § 1692a(6)**

A.    **The Fair Debt Collection Practices Act Does Not Apply
      To A Creditor Collecting Bills On Its Own Behalf**

The purpose of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, is to

protect consumers from the abusive practices often engaged in by debt collectors. *See* 15 U.S.C.

§ 1692(e). *See also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002). A violation of the

FDCPA is established upon proof of four elements:

> (1) the plaintiff is a natural person who is harmed by violations of the FDCPA, (2)
> the 'debt' arises out of a transaction entered primarily for family, personal, or
> household purposes, (3) the defendant collecting the debt is a 'debt collector'
> under the FDCPA, and (4) the defendant has violated, by act or omission, the
> provisions of the FDCPA.

*Blanc v. Palisades Collection, LLP*, 2007 WL 3254381 at *5 (S.D.N.Y. 2007).

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another....[T]he term includes any creditor who, in
> the process of collecting his own debts, uses any name other than his own which
> would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

9

A creditor collecting bills on its own behalf is neither a debt collector nor subject to the provisions of the FDCPA. *See Bleich v. Revenue Maximization Group, Inc.*, 239 F.Supp.2d 262, 264 (E.D.N.Y. 2002) ("[B]y its terms, the FDCPA limits its reach to those collecting the debts 'of another' and does not restrict the activities of creditors seeking to collect their own debts." (citing *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)); *Backuswalcott v. Common Ground Community HDFC, Inc.*, 104 F.Supp.2d 363, 366 (S.D.N.Y. 2000)("[T]he [FDCPA] does not apply to creditors collecting their own debts.").

With limited exceptions, an entity seeking payment on a debt is not a "debt collector," and therefore not subject to the FDCPA, unless that entity is a third party seeking to collect a debt on behalf of a creditor. *See* 15 U.S.C. § 1692a(6). *See also Maguire*, 147 F.3d at 235; *Backuswalcott*, 104 F.Supp.2d at 366. In crafting the FDCPA, "Congress recognized that the activities of creditors seeking to collect their own debts are restrained by the creditors' desire to retain their good will with consumers." *Bleich*, 239 F.Supp.2d at 264. *See also Backuswalcott*, 104 F.Supp.2d at 366 ("[Congress] believed that third-party debt collectors commit most of the abuses.").

The third-party collection provision applies to a creditor seeking to collect its own debts only when the creditor is collecting debts under a different name, thus implying to the debtor that it is not the creditor, but rather a third party collecting in the creditor's place. *See* 15 U.S.C. § 1692a(6). The test for this rule is whether the "least sophisticated consumer" would believe that the bill came from a third party. *Maguire*, 147 F.3d at 235; *Carlson v. Long Island Jewish Medical Center*, 378 F.Supp.2d 128, 131 (E.D.N.Y. 2005) ("The question we must answer is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that the letter at issue was not from [creditor], but was from an unrelated third party.").

Thus, if it is clear to the consumer that the creditor is seeking payment, then the creditor cannot be considered a debt collector under the FDCPA.

**B.    Because MSKCC Was Seeking Reimbursement On Its Own Behalf, It Is Not A Debt Collector Under The FDCPA**

    **1.    Hospitals Billing Under Their Own Name Are Not Subject To The FDCPA**

A hospital collecting bills on its own behalf is not a "debt collector" under FDCPA and is thus not subject to the statute's provisions. *See, e.g., Kolari v. New York-Presbyterian Hosp.*, 382 F.Supp.2d 562, 572-73 (S.D.N.Y. 2005), *rev'd in part on other grounds*, 455 F.3d 118 (2d Cir. 2006) ("[a] plain reading of the statute" results in dismissal of FDCPA claims against a hospital seeking to recover for services provided to uninsured patients); *Bleich*, 239 F.Supp.2d at 264.

In *Bleich*, the plaintiff paid a bill for her flu shot, but that bill was not credited to her account. Both the hospital where the flu shot was given and a third-party collector repeatedly and incorrectly sought to obtain payment. *Id.* at 262-63. When the plaintiff sued both the hospital and third-party collector under the FDCPA, the court granted the hospital's motion for summary judgment. *Id.* at 264.[4]

The court examined the language of the FDCPA, and Congress' intent to apply the statute's provisions <u>only</u> to third-party debt collectors. *Id.* Based on its analysis, the Court

---

[4] In an earlier decision, the court granted summary judgment to the debt collector because the plaintiff failed to dispute the debt through the specific procedures provided under the FDCPA, even though the collection letter included the statutory notice of that procedure. *Bleich*, 233 F.Supp.2d 496, 501 (E.D.N.Y. 2002).

concluded that "there is no question that the Hospital cannot be held liable as a bill collector."
*Id.* Specifically, the court observed that:

> [t]he Hospital attempted to collect its own debt and not, as required by the
> FDCPA, a debt owed to another. Nor did the Hospital use a name other than its
> own in attempt to collect a debt. Under these circumstances, the Hospital is not a
> bill collector under the FDCPA. Therefore, despite the fact that the Hospital's
> actions were no doubt frustrating to Plaintiff, it cannot be liable under the statute.

*Id.*

The court in *Carlson* reached the same conclusion. *Carlson* addressed whether bills sent
by a hospital's in-house collection agency are subject to the FDCPA when the collection agency
operates, and bills, under a separate name, despite its affiliation with the creditor-hospital. 378
F.Supp.2d at 131. There, bills for Long Island Jewish Medical Center and North Shore
University Hospital were sent by an entity called Regional Claims Recovery Services, and
plaintiffs alleged that billing through that entity created the false impression that bills were being
pursued by a third party. *Id.* at 132. Ultimately, the court denied the defendants' motion to
dismiss because the scope and corporate affiliation of the billing agency, as well as what
communications had passed between the parties, could not be determined without further
discovery. *Id.*

In its analysis, the court differentiated the situation of an in-house collection agency from
the one in *Bleich*, stating that "[t]here is no question but that the Hospitals do not constitute debt
collectors within the meaning of the FDCPA." *Id.* The court clarified that, since a creditor is not
a debt collector if it bills under its "true name" (*id.* at 131), "[h]ad any collection effort...been
made clearly and directly by the Hospitals themselves, there is no question but that they would

12

have been attempting to collect a debt in their own names, and no FDCPA action would lie." *Id.* at 132. Therefore, to prove its claim, the plaintiff needed to show that a least sophisticated consumer would have believed that an <u>unrelated third party</u> was collecting the debt on the hospitals' behalf, which the plaintiff in *Carlson* had not yet been able to establish. *See id.* Without more, a hospital could not possibly be held liable under the FDCPA for collecting payment for the hospital's own services.

Therefore, a hospital collecting on bills for its own services is not a "debt collector", and not subject to the FDCPA's provisions.

### 2. MSKCC Was Collecting Bills On Its Own Behalf And Under Its Own Name

Plaintiff's FDCPA claim must be dismissed because MSKCC billed Plaintiff only for services provided by MSKCC. At no time did MSKCC bill Plaintiff on behalf of a third party.

In her Complaint, Plaintiff alleges that she received invoices "from Sloan-Kettering reflecting charges for various physicians' services[5] performed at Sloan-Kettering in connection with the treatment and surgical removal of the tumor previously diagnosed on her kidney." *Complaint* at ¶ 19. Therefore, as Plaintiff concedes, MSKCC billed for services provided on its premises. Plaintiff further states that, when seeking additional information about her bill, she contacted MSKCC directly, and in response MSKCC sent a breakdown of charges. *Id.* at ¶¶ 20, 22-23. Finally, Plaintiff complains about "[t]he amount billed to Plaintiff by <u>Sloan-Kettering</u>." *Id.* at ¶ 21 (emphasis added).

---

[5] Plaintiff disputes only her bill for physician services, and has not alleged any violations regarding billing for MSKCC's non-physician services.

831155v.11

Plaintiff's Complaint makes clear that the bills she received were sent by MSKCC. It was clear to the Plaintiff – or should have been – that she was being billed by MSKCC in connection with the services she obtained at MSKCC. Indeed, MSKCC's bills were explicitly marked with MSKCC's name and logo. *See Parker Decl.* at Exh. A. Even under a least sophisticated consumer standard it should be patently clear that MSKCC itself, and not a third party, or even an in-house collection agency, was seeking payment.

In an attempt to manufacture a claim under the FDCPA, Plaintiff alleges that the physicians who treated her at MSKCC are third parties who arranged for MSKCC to bill on their behalf. *See Complaint* at ¶ 26 ("In those cases where Sloan-Kettering attempts to collect debts on behalf of its doctors or another third party, Sloan-Kettering is acting as a debt collector.").

Plaintiff's allegations regarding MSKCC's physicians have no factual basis. In fact, all of MSKCC's physicians, including those who treated Plaintiff, are salaried employees of MSKCC. In the early 1960's, MSKCC changed from a voluntary medical staff model (physicians in private practice who bring their patients to the hospital) to an employed physician model. MSKCC physicians do not have private practices, and are not permitted to provide services outside of MSKCC without permission from MSKCC management. They are compensated by MSKCC; their benefits, health insurance, malpractice insurance, support staff, and supplies are provided by MSKCC. They receive W-2 tax forms, not 1099s. *See Parker Decl.* at ¶ 13, Exh. C.

For FDCPA purposes, an employee is not a third party with respect to its employer. Clearly, Congress did not intend the FDCPA to create the anomalous scenario by which creditors themselves become debt collectors when collecting for services performed by their own

14

employees. Indeed, the FDCPA specifies that a creditor's employees collecting debts in the creditor's name are *not* considered third-party debt collectors. *See* 15 U.S.C. § 1692a(6)(A). The FDCPA also specifies that its provisions do not apply to:

> any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B). This Court has observed that this language is to be interpreted broadly (*see Backuswalcott*, 104 F.Supp.2d at 367), and it clearly forecloses any argument that an employer billing for services performed by its employees can be considered a debt collector subject to the FDCPA.

### 3. Plaintiff's Commencement And Perpetration Of This Suit Is Sanctionable

It seems evident that Plaintiff brought this suit without first adequately researching the viability of her claims. Had she done so, it would have been apparent that the physicians who treated her were MSKCC employees and that MSKCC is not a debt collector under the FDCPA. Further, Plaintiff disregarded MSKCC's pre-motion conference letter advising that the physicians who treated Plaintiff were MSKCC employees. Rather than asking for documentation of their employment status, Plaintiff asserted – without foundation – that the physicians were "independent contractors" and that MSKCC was a debt collector. Plaintiff's improper conduct in commencing and pursuing this claim is further illustrated by the fact that she never asked MSKCC to apply the 10% discount, and the first time she disputed the charges was in this lawsuit.

15

New York courts have expressed indignation at debtors who jump to sue without first contacting the debt collector to see if the dispute can be resolved. The FDCPA in fact requires debtors to follow a statutorily provided dispute process prior to bringing suit (though, of course, that statutory requirement does not apply to MSKCC since it is not a debt collector). In the first *Bleich* decision, the court dismissed the plaintiff's suit against the debt collector because the plaintiff had failed to adequately contest her bill prior to bringing a lawsuit. The court also expressed frustration with the plaintiff's wasteful litigation, observing that if a plaintiff were permitted to maintain a lawsuit under the FDCPA without first disputing the bill with the collector:

> individuals would be encouraged to resort to litigation (and the prospect of an attorney's fee award) instead of being encouraged to communicate directly with the debt collector to expeditiously resolve their claim…[T]his court…'can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.'

233 F.Supp.2d at 501 (quoting *Lindbergh v. Transworld Systems, Inc.*, 846 F.Supp. 175, 179 (D. Conn. 1994)).

The analogy to the instant suit is clear – Plaintiff has resorted to immediate litigation (and the prospect of an attorney's fee award) without attempting to resolve her claim, and in so doing has needlessly burdened the Court and MSKCC with litigation. This conduct should not be countenanced.

MSKCC is not a debt collector under the FDCPA. Plaintiff's FDCPA claim should be dismissed with prejudice accordingly.

16

<u>**POINT II**</u>

**PLAINTIFF'S GENERAL BUSINESS LAW CLAIM MUST
BE DISMISSED BECAUSE PLAINTIFF HAS NOT ESTABLISHED THE
<u>REQUISITE ACTUAL INJURY OR MATERIALITY PURSUANT TO GBL § 349(a)</u>**

**A.**    <u>**A Plaintiff Must Allege Actual Injury, Separate From A Deceptive Business
Practice, To Sustain A Claim Under GBL § 349(a)**</u>

New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing of any service in this state." To
state a claim under GBL § 349(a), a plaintiff must show that:   (1) the act or practice was
consumer-oriented; (2) the act or practice was misleading in a material way; and (3) the plaintiff
was injured as a result. *See, e.g., In re Evergreen Mut. Funds Fee Litigation*, 423 F.Supp.2d 249,
264 (S.D.N.Y. 2006); *Bildstein v. Mastercard Int'l Inc.*, 329 F.Supp.2d 410, 413 (S.D.N.Y.
2004).

**1.**    <u>**Plaintiff Must Allege That She Was Actually Injured**</u>

To recover under GBL § 349, the plaintiff must allege "actual injury." *See Bildstein*, 329
F.Supp.2d at 414-15. *See also Boule v. Hutton*, 328 F.3d 84, 93-94 (2d Cir. 2003); *Stutman v.
Chemical Bank*, 95 N.Y.2d 24, 29 (2000). The deceptive act itself is not sufficient to constitute
proof of harm. *See Bildstein*, 329 F.Supp.2d at 415 (plaintiff "must plead facts showing actual
injury, not merely the alleged deceptive act."). *See also Newman v. RCN Telecom Services, Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) ("To sustain a claim under GBL § 349…the alleged deceptive
act must be the *cause of* the harm asserted.") (emphasis added); *Stutman*, 95 N.Y.2d at 29. "The
claimed deception cannot itself be the only injury." *Bildstein*, 329 F.Supp.2d at 415. *See also
Small v. Lorillard Tobacco Co., Inc.*, 679 N.Y.S.2d 593, 599 (1st Dep't 1998), *aff'd*, 94 N.Y.2d

831155v.11

43 (1999). ("Neither the case law nor the statutory language [of GBL § 349(a)] supports plaintiff's argument that the deception is the injury."). Rather, the deceptive act must lead to a "transaction" in which the plaintiff is harmed. *Goshin v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 326 (2002).

In *Bildstein*, for example, the plaintiff alleged that a hidden credit card service charge on foreign currency conversion injured him, because he was forced to pay the extra charge and was not aware of it at the time. *See Bildstein*, 329 F.Supp.2d at 412, 415. This Court ruled that such an action failed to state an injury under GBL § 349(h), because it equated the deceptive act with the injury. *See id.* at 416.

Similarly, in *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43 (1999), the plaintiffs claimed that a tobacco company's deceptive practices regarding the addictiveness of nicotine "prevented them from making free and informed choices as consumers." *Id.* at 56. The New York Court of Appeals held that:

> [plaintiffs'] theory contains no manifestation of either pecuniary or "actual" harm; plaintiffs do not allege that the cost of cigarettes was affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a result of their ensuing addiction. Indeed, they chose expressly to confine the relief sought solely to monetary recoupment of the purchase price of the cigarettes. Plaintiffs' cause of action under this statute, as redefined by the trial court and as embraced by them, thus sets forth deception as both act and injury.

*Id.*

The harm, however, need not be pecuniary to be actionable. The harm may also be physical, as when a plaintiff is denied coverage for essential medical care under a deceptive

18

improper insurance claim review process. *See Batas v. Prudential Ins. Co. of America*, 831

N.Y.S.2d 371, 375 (1st Dep't 2007).

**B.    Plaintiff Has Not Successfully Pled Actual Harm, And Therefore
       May Not Maintain A Cause Of Action Under GBL § 349(a)**

  **1.    Plaintiff Conflates The Alleged Deception With The Alleged Injury**

In contrast to the above examples of "actual injury" under the GBL, Plaintiff's only

allegation of injury is MSKCC's allegedly deceptive acts. In her Complaint, Plaintiff alleges that

she was "injured" due to MSKCC's allegedly deceptive business practices because she was

"improperly...invoiced for funds that are not owing." *Complaint* at ¶ 35. Plaintiff makes no

claim that she actually paid the incorrect amount, and in fact, Plaintiff paid no part of the charges

in issue. Indeed, Plaintiff has not claimed (nor can she) that she was ever deceived by the bill.[6]

The bill did not lead to a "transaction", as required by the Court of Appeals in *Goshin*, from

which Plaintiff sustained an injury. *See Goshin*, 98 N.Y.2d at 326. Instead, Plaintiff alleges that

she was injured simply because MSKCC "deceived" her. Based on the holdings of this Court

and New York's appellate courts, Plaintiff's claim is clearly not actionable under the GBL.

  **2.    Plaintiff Has Not Been Injured Under
         Any Of The Facts Alleged In The Complaint**

Contrary to the injuries alleged in the cases above, Plaintiff has not alleged any facts that

demonstrate any actionable injury under the GBL. Plaintiff has not suffered any financial loss,

since she never paid her bills. Moreover, none of her rights have been impaired, nor has she

---

[6] In fact, Plaintiff immediately began researching the bills, as she believed they did not comport with the
Explanations of Benefits sent by her insurer. *See Complaint* at ¶¶ 18-23.

suffered any physical harm or been denied a service she was due.  Plaintiff merely received a bill, telephoned MSKCC for more details, and wrote MSKCC to request a billing breakdown.[7] *Complaint* at ¶¶ 20, 22.  She then commenced this action.

### 3.  Plaintiff Cannot Satisfy The Actual Injury Prong Merely By Claiming That She Contacted MSKCC

A plaintiff may not satisfy the actionable injury prong of a GBL claim merely by inquiring into a questionable bill.  For example, a plaintiff who repeatedly seeks information regarding his credit report does not demonstrate actual injury under the GBL.  *Trikas v. Universal Card Services Corp.*, 351 F.Supp.2d 37, 46 (E.D.N.Y. 2005).  In *Trikas*, the plaintiff telephoned a bank regarding his credit report several times when he suspected an error.  *See id.* at 41.  The court dismissed his claim under GBL § 349 because of a failure to show actual harm, stating explicitly that "[b]ecause Plaintiff has failed to prove any harm...[the GBL] claim must also be dismissed."  *Id.* at 46.  The court found it irrelevant that plaintiff had been forced to engage in a telephone campaign to resolve the issue.

Indeed, to allow telephone or letter inquiries to satisfy the actual injury prong of a GBL § 349 claim renders that element meaningless, and grants any individual a private right of action even though the statute clearly intends to limit such actions to those redressing real harm.  There would rarely be a need to inquire into the injury prong, since an otherwise-uninjured potential plaintiff would merely have to write the alleged wrongdoer a letter prior to bringing suit.

---

[7] Plaintiff alleged that she telephoned MSKCC on one occasion, to ascertain which portions of her expenses had been covered by insurance (*Complaint* at ¶ 20), and that she later corresponded with MSKCC by mail to request a detailed breakdown of all charges on her account (*id.* at ¶ 22).

Plaintiff is clearly relying on the alleged deception as her so-called injury, which is not permitted under the GBL. Therefore she has failed to satisfy her burden, and her GBL claim must fail.

**C.    Plaintiff Cannot Establish A Material Deception, And Therefore May Not Maintain A Cause Of Action Under GBL § 349(a)**

Plaintiff alleges a "deception" that is not materially misleading, and therefore doesn't satisfy the second prong of the GBL. Because the GBL was intended to regulate specifically deceptive acts that affect commerce, a claim is material under the GBL if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein*, 329 F.Supp.2d at 414 (quotation omitted). Under this analysis, Plaintiff bears the burden of showing "materially deceptive conduct" on which she relied to her detriment. *Id.* In *Bildstein*, for example, this Court held that the plaintiff had not satisfied materiality because the complaint did "not contain any allegations concerning the effect disclosure of [a hidden credit card fee] would have had" on the plaintiff. *Id.*

Plaintiff here has failed to allege that the acts of MSKCC have somehow affected commerce, or at all affected her and others' choices in the consumer market. In fact, by alleging that MSKCC engaged in deceptive acts because it failed to inform consumers that the amounts billed were unlawful (*Complaint* at ¶ 34), Plaintiff invites a circular logic leading to the argument that MSKCC's acts were unlawful because it failed to disclose that they were unlawful. However, there is no allegation that the applicability of the 10% discount at all influenced Plaintiff's choice to receive care, nor that it is likely to have an impact on the market choices of potential patients. Therefore, not only does Plaintiff fail to adequately allege actual injury, but her claim also lacks the critical materiality element of a GBL cause of action.

21

Plaintiff has failed to satisfy both the actual injury and the materiality prongs of GBL § 349. Accordingly, MSKCC respectfully requests that this Court dismiss Plaintiff's claim under the General Business Law with prejudice, pursuant to FED. R. CIV. P. 12(b)(6).

22

## POINT III

### PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED CONTRACT DAMAGES, LACKS STANDING TO ASSERT THE CLAIM, AND CANNOT DEMONSTRATE BREACH

To prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a valid contract; (2) performance by one party; (3) breach by the other party; and (4) damages. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir. 1994); *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F.Supp. 134, 137-38 (S.D.N.Y. 1985). The plaintiff must properly plead all these elements to avoid dismissal under Rule 12(b)(6). *Bank Itec N.V*, 612 F.Supp. at 138.

**A.    Plaintiff Has Not And Cannot Plead Damages Flowing From the Alleged Breach Of The MultiPlan Arrangement**

The Court should dismiss Plaintiff's breach of contract claim as the Complaint does not allege that Plaintiff was damaged by the purported breach of the MultiPlan Arrangement. To sustain a breach of contract claim, a plaintiff must establish damages. *See Milan Music, Inc. v. Emmel Communications Booking, Inc.*, 829 N.Y.S.2d 485, 486 (1st Dep't 2007) ("Without a clear demonstration of damages, there can be no claim for breach of contract."); *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777 (1st Dep't 1988) (dismissing claim for breach of contract where complaint contained only boilerplate damages allegations).

Although Plaintiff alleges she was overbilled by $1,677.00, (*Complaint* at ¶ 21), she does not allege that she paid any part of that amount. MSKCC's records confirm that Plaintiff failed to pay any portion of the bills sent to her that are at issue in this litigation. *Parker Decl.* at ¶ 12. Plaintiff has therefore not alleged that she suffered any damages as a result of the supposed

23

breach of the MulitPlan Arrangement. Lacking this essential element, her breach of contract claim should be dismissed as a matter of law. *See Trikas, supra*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005) (contract claim dismissed for failure to allege contract damages).

**B.**    **Plaintiff Lacks Third-Party Beneficiary Status Under The MultiPlan Arrangement**

The Court should also dismiss Plaintiff's breach of contract claim because Plaintiff does not have standing to raise this claim against MSKCC. Because Plaintiff is not a party to the MultiPlan Arrangement, she must demonstrate third-party beneficiary status to maintain her breach of contract claim. To assert contractual rights as a third-party beneficiary, a claimant must demonstrate that: (1) a valid and binding contract exists between other parties; (2) the contract was intended for the third party's benefit; and (3) the benefit is sufficiently immediate, rather than incidental, demonstrating the contracting parties assumed a duty to compensate claimant if the benefit is lost. *State of California Public Employees' Retirement System v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000).[8]

**1.**    **Assurant's Rights Under The MultiPlan Arrangement Preclude The Plaintiff From Claiming Third-Party Beneficiary Status**

Third-party beneficiary status is not conferred to every person who can claim some derivative benefit from a contract to which they are not a party. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 43 (1985). A third party's right to enforce a contract requires proof "that no one other than the third party can recover if the promisor breaches the contract ... or that the language of the contract otherwise clearly evidences an intent

---

[8] By this motion, MSKCC does not concede that its unsigned agreement with MultiPlan is a valid and binding contract.

to permit enforcement by the third party." *Id.* at 45 (internal citations omitted). *See also Artwear, Inc. v. Hughes*, 615 N.Y.S.2d 689 (1st Dep't 1994).

Pursuant to the MultiPlan Arrangement, its "Clients" are entitled to the 10% discount of covered services rendered to eligible patients. *Participating Facility Agreement* at p. 4, § C.2. Because the MultiPlan arrangement provides a discount to <u>Clients</u> (like Assurant) if certain conditions precedent are met, Plaintiff cannot be said to be the only party that "can recover if the promisor breaches the contract." *Fourth Ocean*, 66 N.Y.2d at 45. Thus, Plaintiff fails the "only party" test set forth in *Fourth Ocean*. Further, the MultiPlan Arrangement does not "clearly evidence[] an intent to permit enforcement by the third party." *Id.* For these reasons, Plaintiff does not have third-party beneficiary status under the MultiPlan Arrangement.

## 2.    Plaintiff Is Merely An Incidental Beneficiary Of The MultiPlan Arrangement

Central to the analysis of third-party beneficiary status is the distinction between "intended beneficiaries" (who have third-party beneficiary status) and "incidental beneficiaries" (who do not). *Id.* at 43-44 (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 302). The distinction between intended and incidental beneficiaries rests upon whether "manifestation of the intention of the promisor and promisee is sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable." *Id.* at 43-44 (internal citations omitted). This distinction is made clear by a review of the Court of Appeals' analysis in *Fourth Ocean*.

*Fourth Ocean* involved an action by a property owner claiming to be third-party beneficiary to a contract between a wrecking company and a municipality. *Id.* at 39. The plaintiff sued for damages when the wrecking company failed to complete contractually-defined demolition work. Affirming the dismissal of the complaint, the court held that the property

25

owner could not maintain his action as a third-party beneficiary, because the owner did not qualify as an intended beneficiary of the contract between the wrecking company and municipality. *Id.* at 44. Rather, the plaintiff property owner was merely an incidental beneficiary.

The court rejected the owner's argument that "because the work was being performed to satisfy plaintiff's obligation [to demolish the unsafe house], the contracting parties must have intended to benefit plaintiff." *Id.* Although plaintiff might have ultimately benefited had the contract been fully performed, the provision in the contract that allowed for benefit by the plaintiff could not "be viewed as a promise intended to benefit no one other than plaintiff." *Id.* at 45. *See also Shearman & Sterling*, 95 N.Y.2d at 434-35 (plaintiff not intended beneficiary of defendant's legal services contract with real estate management company, despite incidental benefits of commercial property loans for plaintiff). Thus, the court reasoned, the owner was a incidental beneficiary rather than an intended beneficiary, and had no third-party beneficiary status under the contract. *Fourth Ocean*, 66 N.Y.2d at 45.

In sum, Plaintiff alleges that MSKCC has an arrangement with MultiPlan, MultiPlan has an agreement with Assurant, and Assurant provides health insurance to Plaintiff. Being twice removed from MSKCC's arrangement with MultiPlan, and pursuant to *Fourth Ocean*, Plaintiff is merely an "incidental beneficiary" of the MultiPlan Arrangement, has no third-party beneficiary rights, and therefore lacks standing to assert a breach of the MultiPlan Arrangement against MSKCC.

831155v.11

**C.     Under The Specific Terms Of The MultiPlan Arrangement, MSKCC Provides A 10% Discount Only If Payment Is Received Within 45 Days; Assurant's Payments Were Made From 90 To 120 Days After Receipt**

To sustain a breach of contract claim, a plaintiff naturally must establish the defendant's breach of the subject contract. *Bank Itec N.V*, 612 F.Supp. at 138. Even if Plaintiff had standing to allege a breach of the MultiPlan Arrangement, she cannot demonstrate the requisite breach.

Plaintiff premises her beach of contract claim upon her allegation that MSKCC failed to apply a 10% discount to her account before billing her for the balance remaining after Assurant's payment was posted. Under the literal terms of the MultiPlan Arrangement, however, the 10% discount applied only if only if certain conditions precedent, including payment by the insurance carrier within 45 days of billing, are met. *Parker Decl.* at ¶ 17. Plaintiff's account is not eligible for the 10% MultiPlan discount because Assurant did not make a payment on her account until 90 to 120 days after its receipt of MSKCC's electronic billing. *Id.* at ¶ 18.[9]

---

[9] Even if she qualified as a third-party beneficiary, Plaintiff's rights could be no greater than the actual rights of Assurant as the intended third-party beneficiary. See *Wasserman v. Weisner*, 234 N.Y.S.2d 128, 130 (N.Y. Sup. Ct. New York Cty. 1962) ("[P]laintiffs here, at best, are in the position of third-party beneficiaries, and possess no greater right to enforce the alleged contract than the actual parties thereto."). Assurant was not entitled to the 10% discount because it did not make payment on Plaintiff's account within 45 days of receiving MSKCC's statement. Thus, Plaintiff would not be entitled to the 10% discount even if she were a third-party beneficiary of the MultiPlan Arrangement.

831155v.11

## POINT IV

### IF NOT DISMISSED ON THE MERITS, PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED ON JURISDICTIONAL GROUNDS

**A.**    **The Court Should Dismiss Plaintiff's State Law Claims Pursuant To § 1367(c)(3)**

As set forth above, Plaintiff's FDCPA, GBL, and breach of contract claims each fail to state a valid cause of action against MSKCC.  In the interest of judicial economy and to avoid further wasteful litigation, MSKCC respectfully asks the Court to dismiss each claim on the merits, with prejudice.  If, however, the Court dismisses the sole federal claim but declines to dismiss Plaintiff's GBL and contract claims on the merits, MSKCC respectfully requests that the Court dismiss those claims for lack of federal subject matter jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3).  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966).

**B.**    **The Court Should Dismiss The State Law Claims Pursuant To The Class Action Fairness Act**

Plaintiff's reliance upon CAFA as an alternate basis for jurisdiction (*Complaint* at ¶ 5), is misplaced because her claims fall within the two statutory exceptions to CAFA jurisdiction. These exceptions are commonly referred to as CAFA's "mandatory dismissal" provision, 28 U.S.C. § 1332(d)(4), and "discretionary dismissal" provision, 28 U.S.C. § 1332(d)(3).

**1.**    **Mandatory Dismissal Under CAFA**

CAFA's "mandatory dismissal exception" provides that the Court "shall" dismiss a class action where: (i) more than two-thirds of the proposed class are citizens of the State of filing; (ii) plaintiff seeks significant relief from a defendant based on conduct forming a significant basis for the claims and who is also a citizen of the State of filing; (iii) the principal injuries were

28

incurred in the State of filing; and (iv) no other similar class actions during the three preceding years were filed against the defendants. 28 U.S.C. § 1332(d)(4)(A).  Alternatively, the court must also dismiss where two-thirds or more of the class members and the primary defendants are citizens of the State where the action was filed.  28 U.S.C. § 1332(d)(4)(B).

### 2.    Discretionary Dismissal Under CAFA

CAFA's discretionary dismissal provisions provide that the Court, in the interests of justice and looking at the totality of the circumstances, may dismiss a class action after considering whether: (i) between one-third and two-thirds of the class and the primary defendants are citizens of the filing State; (ii) the claims asserted involve matters of national or interstate interest; (iii) the claims will be governed by laws of the State of filing; (iv) the class action has been pleaded in a manner that seeks to avoid federal jurisdiction; (v) the action was brought in a forum with a distinct nexus with class members, the alleged harm, or defendants; (vi) the number of filing state class members is substantially larger than the number of citizens from any other state and citizenship of other class members is dispersed among many states; and (vii) other class actions asserting similar claims have been filed in the prior three years.  *Id.* at § 1332(d)(3).

### 3.    Plaintiff's State Law Claims Are Subject To CAFA's Mandatory And Discretionary Dismissal Provisions

In *Mattera v. Clear Channel Communications, Inc.*, 239 F.R.D. 70 (S.D.N.Y. 2006), this Court dismissed a class action brought under New York's Labor Law after applying CAFA's dismissal provisions.  The Court reached its determination simply from a review of the alleged claims.  *Id.* at 80-81.

29

As in *Mattera*, this Court can assess the factors for mandatory and discretionary CAFA dismissal simply from a review of the Complaint. As to mandatory dismissal, Plaintiff admits that she received treatment in New York. *Complaint* at ¶¶ 14-16, 19, 23. This will be true of all other class members, leading to a conclusion that the principal alleged injuries (*i.e.,* the alleged over-billing) occurred in New York, the state of filing. Moreover, MSKCC, a citizen of New York, is not only a "significant defendant," but the only defendant. MSKCC's conduct in providing the medical treatment and subsequent billing, all of which takes place in New York, "forms a significant basis" for Plaintiff's claims. *Mattera*, 239 F.R.D. at 80. Plaintiff has not alleged, and MSKCC is unaware of, any other class action asserting the same or similar factual allegations, filed against it within the last three years. While Plaintiff is not a resident of New York, it stands to reason that a large majority of the class members, receiving treatment in New York State, will also reside there. All of these facts compel mandatory dismissal under CAFA.

The factors governing discretionary dismissal under CAFA, that are distinct from the mandatory dismissal factors, also weigh in favor of the dismissal of Plaintiff's state-law claims. It is reasonably likely that many of the class members – and certainly more than one-third – are citizens of New York. Plaintiff's non-federal claims do not involve matters of national interest but rather parochial New York concerns with the GBL and local contracts. New York law will govern. The Complaint has not been pled to avoid federal jurisdiction. This action was brought in New York, which clearly has a distinct nexus with the class members, the alleged harm, and MSKCC. It is also reasonably likely that the New York class members are substantially larger in number than class members from other states and citizenship of these other class members is dispersed.

For these reasons, the Court should dismiss Plaintiff's state law claims under CAFA.

30

## CONCLUSION

For all of the reasons set forth above, MSKCC respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: Great Neck, New York
       February 29, 2008

GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendant Memorial Sloan-Kettering Cancer Center*

By: _____
      Leonard M. Rosenberg (LR 6910)
      Philip C. Chronakis (PC 6714)

111 Great Neck Road
Great Neck, New York  11021
(516) 393-2200

31