UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

HELEN S. KAHANER, for herself and all
others similarly situated,

                Plaintiff,

             v.

MEMORIAL SLOAN-KETTERING
CANCER CENTER,

            Defendant.

------------------------------------------------------- x

    :
    :
    :
    :
    :   Civil Action No. 07-cv-9626 (NRB/KNF)
    :
    :
    :
    :
    :
    :

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

WEISS & LURIE
Joseph H. Weiss (JW-4534)
Mark D. Smilow (MS-2809)
Ilya Nuzov (IN-1955)
551 Fifth Avenue
New York, New York 10176
(212) 682-3025

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS AND SUBSEQUENT EVENTS . . . . . . . . . . . . . . . . . . . . 4

III. RELEVANT LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. The FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. Defendant's Motion Improperly Relies Upon Matters
       Beyond The Complaint That May Not Be Considered Now . . . . . . . . . . . . . . . 10

    B. Memorial Is A Debt Collector As To Physicians
       For Whom Its Seeks To Collect Payment From Patients . . . . . . . . . . . . . . . . 13

    C. Plaintiff Was Not Required To Pay The Disputed Bill
       Nor Complain To The Hospital Before Bringing Suit . . . . . . . . . . . . . . . . . . 16

    D. The Evidence Shows That The
       Physicians Are Independent Contractors . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    E. The Complaint States A Claim For Violation Of
       Section 349 Of The New York General Business Law . . . . . . . . . . . . . . . . . . 17

    F. The Complaint States A Valid Breach Of Contract Claim . . . . . . . . . . . . . . . 20

         1. Plaintiff and the Class Have Standing Because They Are
            Intended Beneficiaries of the MultiPlan Agreement . . . . . . . . . . . . . . . 24

         2. The 10% MultiPlan Discount Applies in this Case
            Because Assurant, Consistent with the Hospital/
            MultiPlan Agreement, Advised the Hospital that the
            Charges for these Doctors Were Being Disputed . . . . . . . . . . . . . . . . . 25

G.    This Court Has Jurisdiction Over All Of The Claims
Asserted In The Complaint, Including The State Law
Claims, Pursuant To The Class Action Fairness Act Of 2005 . . . . . . . . . . . . . . 26

    1.    CAFA's Local and Home State Exceptions Do Not Apply Here . . . . . . 27

    2.    The Discretionary Exception Does Not Apply Here . . . . . . . . . . . . . . . 29

H.    Even Without CAFA, The Court Should
Retain Supplemental Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . 31

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Allen v. Westpoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991) ............................................................................... 6

*Backuswalcott v. Common Ground Community HDFC, Inc.*,
    104 F. Supp. 2d 363 (S.D.N.Y. 2000) ........................................................... 16

*Batac Devel. Corp. v. B & R Consultants Inc.*,
    1999 U.S. Dist. LEXIS 1567 (S.D.N.Y. Feb. 16, 1999) ........................................ 8

*Bell Atlantic Corp. v. Twombly*,
    __ U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................... 7

*Bentley v. Great Lakes Collection Bureau*,
    6 F.3d 60 (2d Cir. 1993) ................................................................................ 8, 9

*Bildstein v. Mastercard International Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) ............................................................. 18

*Bleich v. Revenue Maximization Group, Inc.*,
    239 F. Supp. 2d 262 (E.D.N.Y. 2003) ........................................................ 15, 16

*Blue Tree Hotels Investment, Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004) ............................................................................ 6

*Branum v. Clark*,
    927 F.2d 698 (2d Cir. 1991) .......................................................................... 31

*Brook v. UnitedHealth Group, Inc.*,
    2007 U.S. Dist. LEXIS 73640 (S.D.N.Y. Sept. 27, 2007) ............................... 28, 29

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ..................................................................... 13

*Caidor v. M&T Bank*,
    2006 U.S. Dist. LEXIS 22980 (N.D.N.Y. Mar. 27, 2006) .................................... 13

*Carlson v. Long Island Jewish Medical Center*,
    378 F. Supp. 2d 128 (E.D.N.Y. 2005) ......................................................... 15, 16

*Carnegie-Mellon University v. Cahill,*
    484 U.S. 343 (1988) .................................................................. 30

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ...................................................... 13

*Cirkot v. Diversified Systems, Inc.,*
    839 F. Supp. 941 (D.Conn. 1993) .............................................. 8

*Clomon v. Jackson,*
    988 F.2d 1314 (2d Cir. 1993) ...................................................... 9

*Cresswell v. Sullivan & Cromwell,*
    922 F.2d 60 (2d Cir. 1990) ........................................................ 31

*Faulkner v. Beer,*
    463 F.3d 130 (2d Cir. 2006) ........................................................ 8

*Feick v. Fleener,*
    653 F.2d 69 (2d Cir. 1981) .......................................................... 6

*Foman v. Davis,*
    371 U.S. 178 (1962) .................................................................. 31

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007) ...................................................... 27

*Goldberg v. Meridor,*
    567 F.2d 209 (2d Cir. 1977) ...................................................... 31

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bartolotti,*
    374 F.3d 56 (2d Cir. 2004) .......................................................... 9

*Goldstein v. Pataki,*
    2008 U.S. App. LEXIS 2241 (2d Cir. Feb. 1, 2008) ....................... 6, 7

*Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton,*
    997 F. Supp. 340 (E.D.N.Y. 1998) .............................................. 8

*Gurary v. Winehouse,*
    190 F.3d 37 (2d Cir. 1999) ........................................................ 14

*Heilweil v. Mount Sinai Hospital,*
    32 F.3d 718 (2d Cir. 1994) .......................................................... 8

iv

*Iqbal v. Hasty,*
   490 F.3d 143 (2d Cir. 2007) ................................................................. 7

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
   140 F.3d 442 (2d Cir. 1998) ................................................................. 30

*Jenkins v. Heintz,*
   25 F.3d 536 (7th Cir. 1994) ................................................................. 10

*Johnson v. Eaton,*
   873 F. Supp. 1019 (M.D.La. 1995) ...................................................... 9

*Kolari v. New York-Presbyterian Hospital,*
   382 F. Supp. 2d 562 (S.D.N.Y. 2005) ................................................. 15

*Laurus Master Fund, Ltd. v. Versacom International, Inc.,*
   2003 U.S. Dist. LEXIS 8480 (S.D.N.Y. May 22, 2003) ....................... 22

*Lowdermilk v. United States Bank National Associate,*
   479 F.3d 994 (9th Cir. 2007) ............................................................... 27

*Lowery v. Alabama Power Co.,*
   483 F.3d 1184 (11th Cir. 2007) ........................................................... 28

*Malin v. Ivax,*
   920 F. Supp. 1260 (11th Cir. 1995) .................................................... 6

*Mattera v. Clear Channel Committee, Inc.,*
   239 F.R.D. 70 (S.D.N.Y. 2006) ...................................................... 27, 28

*Miele v. Sid Bailey, Inc.,*
   192 B.R. 611 (S.D.N.Y. 1996) ............................................................. 8

*Northrop v. Hoffman of Simsbury, Inc.,*
   134 F.3d 41 (2d Cir. 1997) ............................................................... 6, 7

*Obabueki v. International Bus. Machines Corp.,*
   145 F. Supp. 2d 371 (S.D.N.Y. 2001) ................................................. 20

*Oliver Schs., Inc. v. Foley,*
   930 F.2d 248 (2d Cir. 1991) ................................................................ 31

*Estate of Pew v. Cardarelli,*
    2006 U.S. Dist. LEXIS 89025 (N.D.N.Y. December 6, 2006) .............................................. 27

*Podell v. Citicorp Diners Club, Inc.,*
    914 F. Supp. 1025 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997) ............................... 19

*Russell v. Equifax A.R.S.,*
    74 F.3d 30 (2d Cir. 1996) ..................................................................................... 8, 9

*In re Shopko Sec. Litigation,*
    2002 U.S. Dist. LEXIS 23887 (E.D. Wis. Nov. 5, 2002) ..................................................... 6

*Shoup v. Illiana Recovery Systems, Inc.,*
    2002 U.S. Dist. LEXIS 674 (W.D.Mich. Jan. 8, 2002) ....................................................... 8

*Slenk v. Transworld System,*
    236 F.3d 1072 (9th Cir. 2001) ............................................................................... 7

*Smith v. Law Offices of Mitchell N. Kay,*
    124 B.R. 182 (D.Del. 1991) .................................................................................. 8

*Standish v. Woods,*
    2004 U.S. Dist. LEXIS 11612, *adopted by,* 2004 U.S. Dist. LEXIS 11613,
    (D. Or. May 10, 2004) ....................................................................................... 13

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ..................................................... 6

*Travelers Insurance Co. v. 633 Third Associate,*
    973 F.2d 82 (2d Cir. 1992) ................................................................................... 22

*Trikas v. Universal Card Services Corp.,*
    351 F. Supp. 2d 37 (E.D.N.Y. 2005) ............................................................... 19, 20, 23

*Tsenes v. Trans-Continental Credit and Collection Corp.,*
    892 F. Supp. 461 (E.D.N.Y. 1995) .......................................................................... 10

*Turner v. J.V.D.B. & Associate, Inc.,*
    330 F.3d 991 (7th Cir. 2003) ................................................................................ 10

*U.S. Fidelity and Guaranty Co. v. J. United Electric Contracting Corp.,*
    62 F. Supp. 2d 915 (E.D.N.Y. 1999) ........................................................................ 23

*Valencia v. Lee,*
    316 F.3d 299 (2d Cir. 2003) ................................................................................. 30

*Weitzman v. Stein,*
    459 F. Supp. 400 (S.D.N.Y. 1978) ............................................................... 20

*Williams v. The Dow Chemical Company,*
    326 F. Supp. 2d 443 (S.D.N.Y. 2004) ........................................................... 30

*Wyler v. Computer Credit, Inc.,*
    2006 U.S. Dist. LEXIS 57766 (E.D.N.Y. March 3, 2006) ........................... 9

## STATE CASES

*Bogdan & Faist P.C. v. CAI Wireless System Inc.,*
    745 N.Y.S.2d 92 (N.Y. App. Div. 3d Dept. 2002) ........................................ 20

*Bregman v. Meehan,*
    479 N.Y.S.2d 422 (Sup. Ct., Nassau Co. 1984) ............................................ 23

*Brushton-Moira Central School District v. Fred A. Thomas Associates,*
    91 N.Y.2d 256 (N.Y. 1998) ........................................................................... 22

*County of Nassau v. Flushing Ultrasound, Inc.,*
    1 A.D.3d 557 (N.Y. App. Div. 2d Dept. 2003) ............................................. 21

*Emilio v. Robison Oil Corp.,*
    28 A.D.3d 417 (N.Y. App. Div. 2d Dept. 2006) ........................................... 19

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.,*
    66 N.Y.2d 38 (N.Y. 1985) ............................................................................. 25

*Gordon v. Dino De Laurentiis Corp.,*
    529 N.Y.S.2d 777 (N.Y. App. Div. 1st Dept. 1988) ..................................... 23

*Goshen v. Mutual Life Insurance Co.,*
    98 N.Y.2d 314 (N.Y. 2002) ........................................................................... 19

*Hadcock Motors, Inc. v. Metzger,*
    459 N.Y.S.2d 634 (N.Y. App. Div. 4th Dept. 1983) ..................................... 23

*Hunts Point Realty Corp. v. Pacifico,*
    847 N.Y.S.2d 902 (Sup. Ct. Nassau Co. 2007) ............................................. 22

*J. Harry McNally , Inc. v. State,*
    11 N.Y.S.2d 577 (N.Y. Ct. Cl. 1939) ........................................................... 20

*Key International Manufacturing, Inc. v. Morse/Diesel, Inc.*,
142 A.D.2d 448 (N.Y. App. Div. 2d Dept. 1988) ................................................ 25

*Kronos Inc. v. AVX Corp.*,
581 N.Y.S.2d 942 (N.Y. App. Div. 4th Dept. 1992), *rev'd on other grounds*,
81 N.Y.2d 90 (N.Y. 1993) .................................................................................... 21

*NYU v. Continental Insurance Co.*,
87 N.Y.2d 308 (N.Y. 1995) ................................................................................. 21

*Simon v. Etgen*,
213 N.Y. 589 (N.Y. 1915) .................................................................................... 23

*Small v. Lorillard Tobacco Co., Inc.*,
94 N.Y.2d 43 (N.Y. 1999) .................................................................................... 18

*Smith v. Chase Manhattan Bank, USA, N.A.*,
293 A.D.2d 598 (N.Y. App. Div. 2d Dept. 2002) ............................................... 19

*Sokoloff v. Harriman Estates Development Corp.*,
96 N.Y.2d 409 (N.Y. 2001) ................................................................................. 22

*Spoolan Realty Corp. v. Haebler*,
147 Misc. 9, 262 N.Y.S. 197 (Sup. Ct. Bronx Co. 1931) ..................................... 23

## FEDERAL STATUTES

15 U.S.C. § 1692 ................................................................................................... 3

15 U.S.C. §1692a(5) ............................................................................................. 9

15 U.S.C. § 1692a(6) ............................................................................................ 16

15 U.S.C. §1692e .................................................................................................. 10

15 U.S.C. §1692e(2) ............................................................................................. 10

15 U.S.C. §1692f .................................................................................................. 10

15 U.S.C. §1692f(1) .............................................................................................. 10

15 U.S.C. §1692g .................................................................................................. 17

15 U.S.C. §1692k .................................................................................................. 8

15 U.S.C. §1692k (a)(1) ................................................................ 8

28 U.S.C. § 1332(c) ..................................................................... 27

28 U.S.C. § 1332(d) ..................................................................... 4

28 U.S.C. §§ 1332(d)(2) ............................................................... 27

28 U.S.C. § 1332(d)(2)(A) ............................................................ 27

28 U.S.C. § 1332(d)(5)(B) ............................................................ 27

28 U.S.C. § 1367(a) ................................................................. 4, 30

28 U.S.C. § 1367(c) .................................................................... 30

Fed. R. Civ. P. 8(a) ..................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 31

Fed. R. Civ. P. 12(d) ............................................................ 3, 8, 11

Fed. R. Civ. P. 15(a) ................................................................... 31

Plaintiff Helen S. Kahaner ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion by Defendant Memorial Sloan-Kettering Cancer Center (the "Hospital" or "Memorial") to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.  PRELIMINARY STATEMENT

This action arises out of Memorial's and its physicians' billing practices for services rendered to their patients.  The Hospital has a justly earned reputation as a leading cancer research and treatment center.  However, even great institutions must be held accountable when they act wrongfully toward the very people they are dedicated to serve.  This is such an instance. The Hospital engaged in a practice of contractually discounting its doctors' invoices (and perhaps its own), foregoing 10% of the bills to patients' health insurers, and then billing the patients themselves for the waived balances, despite an express written agreement with the insurers that it would not engage in such "balance billing."  Further, Memorial made no disclosure to its patients that the monies for which they were being dunned were covered by insurance but were waived by the Hospital and its doctors.

Memorial does not deny that Plaintiff and other patients were (and are) balance billed by the Hospital for physician services covered by insurance.  It does not deny that the bills it sent (and continues to send) to patients include demand for monies not collected from the insurer because Memorial and its doctors unilaterally agreed with the insurers not to do so, without ever informing patients or seeking or obtaining their consent.  It does not deny that it balance billed its patients for monies exceeding those amounts which doctors working in the Hospital agreed to accept for providing medical care.  It does not deny that it hid the truth from the patients (and perhaps the insurers) and did so in violation of the express provisions in its agreement with

1

insurers that "***Memorial shall receive the negotiated rates for all patient care rendered under the Agreement, less any negotiated volume discounts***" and "***Memorial shall not balance bill***."

Memorial also has failed to disclose to the Court that its agreement with the insurer, appended as one of its exhibits submitted on this motion, expressly represents that "Each party, including its officers, directors, employees and agents, ***acts as an independent contractor***." It also failed to disclose that each doctor bill had a distinct invoice number, that the insurance carrier's payments were made payable directly to two of the doctors in their individual names, and that the taxpayer identification numbers used by the insurer for processing and paying the doctor bills were different than the Hospital's Employer Identification Number.[1]

Rather, seeking to divert the Court's attention from the merits of Plaintiff's claims, Memorial resorts to *ad hominem* attacks upon Plaintiff and her counsel, seeking to have the action dismissed prior to discovery, predicated upon its improper reliance on factual contentions derived from documents and declarations which are outside the four corners of the Complaint, which established precedent requires be excluded from consideration at the motion to dismiss stage.

After stripping Memorial's arguments of their foul *ad hominem* attacks and innuendo, as more fully set forth below, it is plainly evident that Defendant's motion should be denied. *First*, Defendant improperly seeks to have the Court determine this motion by relying upon declarations which raise factual matters (and issues) well beyond the factual allegations contained in the

---

[1]    Perhaps this explains the vehemence with which counsel for the Defendant rebuffed Plaintiff's written and oral requests for discovery at the pre-motion conference stage of the litigation concerning the material issues of fact raised by the Hospital's motion. Plaintiff believes that the discovery will show that the factual allegations upon which the Hospital's motion is based are contradicted by the Hospital's own documents.

complaint and required of plaintiffs to state a *prima facie* claim. This is a transparent attempt to skirt the requirements of Fed. R. Civ. P. 12(d), which is designed to give the Plaintiff a "reasonable opportunity to present all the material that is pertinent to the motion." Therefore, these materials and the arguments derived therefrom must be excluded from consideration on this motion to dismiss.

*Second*, Defendant is a "debt collector" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Drawing all inferences in Plaintiff's favor, the only conclusion that can reasonably be drawn by the "least sophisticated consumer" from the invoices sent to Plaintiff is that the Hospital is billing for services provided by doctors, who will be paid from the patients' remittances. Moreover, the evidence otherwise shows that the doctors are independent contractors and not employees of the Hospital. In addition, there is no pre-suit requirement of payment or presentment under the FDCPA, which is a strict liability statute.

*Third*, the deceptive practices count under New York's General Business Law § 349(a) states a valid claim because the Hospital concealed from patients that their bills were inflated by the insurance covered amounts which the doctors and Memorial unilaterally chose not to collect from insurers. This unlawfully resulted in the Plaintiff and class members being overcharged.

*Fourth*, Plaintiff has adequately pled injury resulting from the Hospital's breach of contract because the wrongful imposition of a liability – *i.e.*, Plaintiff being placed on the hook by the balance billing for amounts she did not owe – is deemed actual damage, even while the liability remains unsatisfied, and because class members who paid the overbilled amounts have out-of-pocket damages. Furthermore, Plaintiff and the class here are entitled to nominal and punitive damages, as well as specific performance for amounts not yet paid.

*Fifth*, because the carrier disputed the doctors' charges pleaded in the Complaint in writing within the time allowed by the MultiPlan agreement (to which Plaintiff and all class members are intended beneficiaries), the insurer properly withheld payment thereof until the dispute was resolved. In any event, Memorial and its doctors accepted the reduction without protest.

*Finally*, the Court has jurisdiction over all of the claims asserted herein pursuant to both the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. § 1367(a), supplemental jurisdiction.

For all of the foregoing reasons, as more fully set forth below, the Defendant's motion to dismiss should be denied in its entirety.

## II.  STATEMENT OF FACTS AND SUBSEQUENT EVENTS

The Complaint in this case is concise and straightforward. It seeks redress for all Memorial patients who were and are being balance billed for amounts in excess of the agreed amount at which the physicians treating them contracted to perform their services under pertinent regulations or insurance contracts. Compl. ¶¶ 7, 9. It alleges that the doctors working in the Hospital and for whom the Hospital seeks remuneration from patients or their insurers are, in fact, unrelated third parties to Memorial. Compl. ¶ 26. The bills sent on their behalf sought payment of the purported balance remaining after payments made by Plaintiff's medical insurer, Assurant Health ("Assurant"). Compl. ¶¶ 15-19. The Complaint then details how the invoices improperly balance billed the Plaintiff for the 10% MultiPlan[2] discount, which is a negotiated

---

[2]    For purposes of this motion, Defendant has conceded the existence, validity and enforceability of the 10% MultiPlan discount for services provided by its physicians. *See* Declaration of Roger Parker in Support of Defendant's Motion to Dismiss the Complaint, executed on February 29, 2008, Ex. D at p.9 ("Parker Decl."); Memorandum of Law in Suport of

discount enuring to the insured's benefit for which the patient bears no responsibility of payment pursuant to agreements between Assurant, MultiPlan and Memorial. Compl. ¶¶ 16, 18-21.

As a result, the Hospital violated the FDCPA,[3] committed deceptive business practices in violation of § 349(a), and breached its contract not to balance bill the Plaintiff and all similarly situated patients for amounts that were discounted. Plaintiff seeks damages for Defendant's unlawful conduct and asserts a further declaratory relief claim for a judicial determination of the parties' rights. Compl. ¶¶ 27-42.

Prior to Defendant's filing of its motion to dismiss, Plaintiff's counsel requested discovery of Defendant. Counsel for the Hospital opposed providing any discovery until after the motion to dismiss was decided. Plaintiff also requested that the Court order discovery, but that request was denied in a conference call on January 25, 2008. *See* Declaration of Mark D. Smilow in Opposition to Defendant's Motion to Dismiss, executed on April 16, 2008, ¶¶ 11-20 ("Smilow Decl."). At no time did the Hospital state its willingness to provide Plaintiff with discovery, even partial documentary discovery, to support any of the Hospital's contentions of fact raised by it. *Id.*

## III.  RELEVANT LEGAL STANDARDS

### A.    Standard of Review

It is established that a Rule 12(b)(6) motion tests only the legal sufficiency of the claims pleaded. To survive, a pleading "must only include 'a short and plain statement of the claim

---

Defendant's Motion to Dismiss at 8 n.3 ("Def. Mem."); *but see* Def. Mem. at 24 n.8.

[3]     For FDCPA purposes, the Hospital conceded that its "physician billing department is an internal department of Memorial, staffed entirely by Memorial employees." Parker Decl. ¶ 15; Def. Mem. at 13-14.

showing that the pleader is entitled to relief.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (*quoting* Fed. R. Civ. P. 8(a)). It need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* Thus, a pleading is sufficient if it gives the opponent fair notice of the claims asserted, the grounds upon which they rest, and states claims upon which relief could be granted. *Id.* at 514.

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *Goldstein v. Pataki*, 2008 U.S. App. LEXIS 2241, at *4 n.1 (2d Cir. Feb. 1, 2008); *Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 44 n.2 (2d Cir. 1997).[4] If a district court wishes to consider additional material, Rule 12(d) "requires it to treat the motion as one for summary judgment under Rule 56." *Kramer*, 937 F.2d at 773.[5]

---

[4]    The statements in these extraneous documents are ***not*** considered for the truth of the matters asserted, but only to determine what disclosures were made. *In re Shopko Sec. Litig.*, 2002 U.S. Dist. LEXIS 23887 at *6 (E.D. Wis. Nov. 5, 2002), *citing, inter alia, Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[5]    Contrary to the Defendant's contention that documents merely ***referred*** to in the Complaint may be reviewed on a motion to dismiss, Def. Mem. at 8 n.1, the very case relied upon by Defendant, *Feick v. Fleener*, 653 F.2d 69, 75 n.4 (2d Cir. 1981), only considered an ***exhibit*** attached to the complaint and incorporated by reference therein, which thereby became "a part of the complaint for all purposes" under Rule 10(c), not the documents relied upon by Defendant here, none of which were attached to the instant Complaint or incorporated therein by reference. *See also Malin v. Ivax*, 920 F. Supp. 1260, 1262 (11th Cir. 1995) (the fact that

The Court must derive its version of the facts from the allegations set forth in the complaint by construing it liberally, accepting all factual allegations contained therein as true, and drawing all reasonable inferences in the plaintiff's favor. *Goldstein*, 2008 U.S. App. LEXIS 2241, at *3-*4 (*citing Stuto v. Fleishman*, 164 F.3d 820, 824 (2d Cir. 1999)). Detailed factual allegations are not required, just the "grounds of [] entitlement to relief." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). A complaint "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 1969 n.8. Dismissal is *inappropriate* if the factual allegations raise a "right to relief above the speculative level." *Goldstein*, 2008 U.S. App. LEXIS 2241, at *14-*15 (*quoting Bell Atlantic*, 127 S. Ct. at 1965). Stated differently, the complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974.[6] The complaint's failure to cite to a statute (or to cite to the correct statute) in no way affects the merits of the claim pled because factual allegations alone are what matters. *Northrop*, 134 F.3d at 46.

Finally, a court sitting in judgment on a complaint pursuant to R. 12(b)(6) may not consider matters outside of the complaint (even though they are submitted by the movant by

---

plaintiff quotes a corporate document without appending it to the pleading does not permit the defendant to introduce it in a motion to dismiss).

[6]    The Second Circuit interprets *Bell Atlantic* as requiring "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Once plausibility is satisfied, the weight of the evidence that supports or contradicts the plaintiff's theory must await trial or summary judgment for resolution. *See Slenk v. Transworld Sys.*, 236 F.3d 1072 (9th Cir. 2001) (it is not the province of the court to weigh evidence for purposes of summary judgment when genuine issues of material fact are raised concerning the personal use requirement of the FDCPA).

affidavit) unless the plaintiff is advised that the motion will be converted into one for summary judgment and the plaintiff is given ample opportunity to oppose the motion through appropriate evidence, including the opportunity to conduct additional discovery. *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340, 346 (E.D.N.Y. 1998) ("to consider matters outside the pleadings, the Court must convert this Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56").[7]

## B.    The FDCPA

The FDCPA is a strict liability statute. *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). A single violation of any of its terms is sufficient to support judgment for the consumer. 15 U.S.C. §1692k; *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *Cirkot v. Diversified Systems, Inc.*, 839 F.Supp. 941 (D.Conn. 1993).[8]

---

[7]    Fed. R. Civ. P. 12(d) requires that "the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See generally Faulkner v. Beer*, 463 F.3d 130, 134-35 (2d Cir. 2006) (discussing standards under the previous provision of Rule 12(b)(6)). Plaintiff respectfully submits that should the Court consider Defendant's exhibits, this motion will have been converted to one for summary judgment under Rule 56, and in that event, Plaintiff must be given discovery in order to supplement her opposition with respect thereto.

As the Court knows, summary judgment should only be granted if, after discovery is exhausted, no rational factfinder could find in favor of the non-moving party. *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 721 (2d Cir. 1994); *see generally Batac Devel. Corp. v. B & R Consultants Inc.*, 1999 U.S. Dist. LEXIS 1567 at **5-6. (S.D.N.Y. Feb. 16, 1999).

[8]    Violation of the FDCPA permits the recovery of all actual damages, 15 U.S.C. §1692k (a)(1); *Miele v. Sid Bailey, Inc.*, 192 B.R. 611 (S.D.N.Y. 1996), without regard to state law requirements concerning the proof of intentional or negligent infliction of emotional distress. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D.Del. 1991) (actual damages include any out-of-pocket expenses and personal humiliation, embarrassment, mental anguish or emotional distress); *Shoup v. Illiana Recovery Systems, Inc.*, 2002 U.S. Dist. LEXIS 674 (W.D.Mich. Jan. 8, 2002) ($53,000 in damages awarded, including $27,500 for mental distress).

The FDCPA applies to attempts to collect a "debt," defined as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C. §1692a(5).

The FDCPA covers only the activities of a "debt collector," defined as "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects[9] or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).

Whether a communication or other conduct violates the FDCPA is determined from the objective perspective of the "least sophisticated consumer." *Russell*, 74 F.3d at 34; *Bentley*, 6 F.3d at 62. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). "The unsophisticated consumer, while not at the bottom rung of the ladder, is still unsophisticated--uninformed, naive, trusting, possessing below average intelligence." *Johnson v. Eaton*, 873 F.Supp. 1019 (M.D.La. 1995), *mod. on other grounds*, 80 F.3d 148 (5th Cir. 1996); *see also Wyler v. Computer Credit, Inc.*, 2006 U.S. Dist. LEXIS 57766 at **17-18 (E.D.N.Y. March 3, 2006).

---

[9]    Whether one "regularly collects" consumer debts is "assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bartolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004).

The FDCPA prohibits the "use of any false, deceptive, or misleading representation" in an attempt to collect a debt. 15 U.S.C. §1692e. This section enumerates, without limitation, sixteen such violations. As before, the test for determining whether a debt collector violated §1692e is objective, turning not on the question of what the debt collector knew, but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. It is a violation of this section to make a false representation of the character, amount or legal status of the debt. 15 U.S.C. §1692e(2).[10]

## IV.    ARGUMENT

### A.    Defendant's Motion Improperly Relies Upon Matters Beyond The Complaint That May Not Be Considered Now

Notwithstanding black letter law that 12(b)(6) dismissal is improper when questions of fact are raised concerning material issues in dispute in the case, absent a conversion of the motion into one for summary judgment pursuant to R. 12(d), Defendant here introduces and relies upon contentions and extraneous materials which go well beyond the four corners of the Complaint, are flatly contradicted by the scant evidence available in this case prior to any discovery,[11] and raise the following genuine issues of material fact and law:

---

[10]     The FDCPA prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. Unfair practices are defined to include "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1); *see Tsenes v. Trans-Continental Credit and Collection Corp.*, 892 F.Supp. 461 (E.D.N.Y. 1995) (list of §1692f violations found in the subsections are nonexhaustive, and a cause of action is provided in the prefatory language). The collector's knowledge is not a requirement for a violation of 15 U.S.C. §1692f. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991 (7th Cir. 2003). The addition of unauthorized insurance charges and other forms of debt padding are forbidden. *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994).

[11]     With the exception of the substance of the invoices appended as Exs. A and B to the Parker Decl., neither the documentary evidence nor the factual assertions proffered by

- Whether the physicians for whom the Hospital improperly billed Plaintiff and the other members of the class are "salaried, full-time employees of [the Hospital]" and, therefore, the Hospital is not a debt collector within the meaning of the FDCPA. Parker Decl. ¶¶ 4, 13-15; Def. Mem at 6;

- Whether the Hospital is estopped from repudiating the agreement which it signed with MultiPlan, which contradicts the Hospital's position by expressly stating that its employees are independent contractors. *See* Parker Decl. Ex. D § E.1;

- Whether the Hospital's submission of its 2007 W-2 forms, certain invoices not referred to or incorporated by reference in the Complaint, and other assertions of fact by affidavit (all of which lack a proper foundation) require conversion of this motion, with discovery being first granted to the Plaintiff, into one for summary judgment pursuant to Fed.R.Civ.P. 12(d) and whether submission of these forms and affidavits prove that the physicians are *not* independent contractors. *See* Parker Decl. ¶ 13-15 & Ex. C; Def. Mem. at 6, 14;

- Whether the Hospital's submission of the (unsigned, undated and draft-stamped) documents purporting to be the Hospital/MultiPlan agreement (which also lacks a proper foundation) requires conversion of this motion, with discovery being first granted to the Plaintiff, into one for summary judgment pursuant to Fed.R.Civ.P. 12(d) and whether this submission proves that the 10% MultiPlan discount applies only if the Hospital received the insurer's payment for the services provided to Plaintiff within 30 or 45 days from the date of billing. *See* Declaration of Leonard M. Rosenberg, Esq., in Support of Defendant's Motion to Dismiss the Complaint, executed on February 29, 2008, ¶ 6 ("Rosenberg Decl."); Parker Decl. ¶¶ 16-18 & Exs. D-E; Def. Mem. at 8;

- Whether the Hospital's contention that it did not receive the insurer's payment timely in the Plaintiff's case means that the 10% MultiPlan discount does not apply. *See* Rosenberg Decl. ¶ 6; Parker Decl. ¶ 18; Def. Mem. at 7-8;

- Whether the Hospital waived this contention by accepting the discounted payment from the insurer without protest;

- Whether Plaintiff and the other class members are third-party beneficiaries under the Hospital/MultiPlan agreement, which expressly states that "Memorial shall not balance bill." *See* Rosenberg Decl. ¶ 8; Parker Decl. ¶ 6;

---

Defendant in its motion to dismiss papers and discussed below were in Plaintiff's or her counsel's knowledge or possession prior to the filing of the instant motion to dismiss. *A fortiori,* Plaintiff and her counsel did not in any way rely upon this information in the drafting of the Complaint.

- Whether, as it now claims, the Hospital properly billed Plaintiff's insurance carrier in March 2007. Parker Decl. ¶ 8; Def. Mem. at 6-7;

- Whether the inquiries by Plaintiff and her husband to the Memorial physician billing department, which the Hospital now concedes occurred on several occasions, included a request that the 10% MultiPlan discount be credited to the bills invoiced and whether the Hospital's "records" of these inquiries accurately reflect their full nature. *See* Parker Decl. ¶ 10; Def. Mem. at 7;

Because the foregoing are predicated in whole or in part upon the submission of documents not properly before the Court on this Motion to dismiss, these documents should be excluded from consideration, the arguments derived therefrom should be foreclosed from consideration, and the motion denied in full.

However, if the Court does not exclude these documents, Plaintiff respectfully requests a full and fair opportunity to conduct discovery on the issues raised prior to a determination of the motion. The grounds for this request, in addition to Rule 12(d), are that contrary to the Defendant's contentions, the evidence at Plaintiff's disposal, which Defendant also possesses – but failed to submit on this motion, indicates the following:

- Assurant's payments to Drs. Heelan and Dalecki were made directly to them, in their individual names, as clearly reflected in the payment summary section of the Explanations of Benefits attached as Exs. A-B to the Smilow Decl.;

- The taxpayer identification numbers used by Assurant in connection with its processing and payment of the claims for Doctors Heelan, Dalecki, Fine and Herr were different than the Employer Identification Number identified on the 2007 W-2 forms submitted as Ex. C to the Parker Decl., and they were different than each other. *See* Smilow Decl. ¶ 9;

- The combined result of the foregoing evidence dictates that since the doctors use their own taxpayer identification numbers and receive direct payment from third party insurers for their services, they are independent contractors – not employees – of the Hospital. *See* Smilow Decl. ¶ 10;

- Plaintiff and the similarly situated class members are intended beneficiaries under the Hospital/MultiPlan agreement; and

12

- Assurant timely disputed the doctor charges of Plaintiff and, therefore, properly withheld payment under the Hospital/MultiPlan agreement. *See* Affidavit of Donald Kahaner in Opposition to Defendant's Motion to Dismiss, sworn to on April 15, 2008 ("Kahaner Aff."). Payment was accepted without protest.

Accordingly, Defendant's submissions are not determinative and discovery is proper.

In addition, Defendant's inclusion of those documents, which it thought may support its position, is improper because they are offered to prove the truth of their content.[12]  Clearly, the W-2 forms and taxpayer identification number contained therein and the MultiPlan agreement are offered to prove the employment of the doctors by the Hospital pursuant to the "employed physician model" and that the 10% MultiPlan discount is limited to the receipt of payment by the Hospital within 30-45 days of billing, respectively.  Thus, the truth of the matters asserted are improperly sought to be proved.

Accordingly, it is beyond cavil that each of the extraneous issues raised by Defendant on this motion to dismiss invoke questions of fact going to the merits of Plaintiff's claims, which are not properly disposed of on this motion to dismiss.

**B.    Memorial Is A Debt Collector As To Physicians
For Whom It Seeks To Collect Payment From Patients**

Plaintiff does not dispute the premise, implicit in §1692a(6), that a creditor seeking payment for its own account is not a debt collector under the FDCPA.  However, Plaintiff does

---

[12]    *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); *Caidor v. M&T Bank*, 2006 U.S. Dist. LEXIS 22980, at *12 n.12 (N.D.N.Y. Mar. 27, 2006) (judicial notice of facts contained in documents inappropriate to establish the truth of disputed factual matters); *Standish v. Woods*, 2004 U.S. Dist. LEXIS 11612 at **8-9, *adopted by*, 2004 U.S. Dist. LEXIS 11613 (D. Or. May 10, 2004) (same); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n.15 (11th Cir. 1999) (" . . . our holding does not mean that the proffered documents should be judicially noticed in order to prove the truth of those documents' contents").

dispute Defendant's contention that the Hospital did not act as a debt collector when it invoiced

patients for services provided by its physicians. The ordinary prudent patient, let alone the least

sophisticated one, would recognize the Hospital's invoicing to be the collection of a debt owed to

the physicians. Indeed, patients received the Hospital's invoice -- on the Hospital's letterhead --

containing (with emphasis added):

➤ A subheading identifying the sender as the "<u>Physician</u> Billing
Department;"

➤ A remittance instruction stating clearly:

"MAKE CHECK PAYABLE TO: <u>PHYSICIAN</u> BILLING
DEPARTMENT;"

➤ A line of bolded, oversized capital letter typeface printed above the
itemized charges stating: "STATEMENT OF <u>PHYSICIAN</u> SERVICES;"

➤ A representation below that, in capital letters, stating:

"THE FOLLOWING INVOICES DESCRIBE OUTSTANDING
CHARGES FOR SERVICES RENDERED BY <u>PHYSICIANS</u>
AND OTHER HEALTH CARE PROFESSIONALS AT
MEMORIAL SLOAN-KETTERING CANCER CENTER;" and

➤ Thereafter separately listing, by distinct invoice number, each doctor who
provided services, the physician group to which that doctor belongs, the
date the services were provided, the services that were provided and the
charges therefor,

*see* Parker Decl. Exs. A-B.[13] Thus, at the pleading stage, the Hospital's billing actions as a debt

collector for services provided by others, i.e., the physicians and other health care professionals,

---

[13]    While resort to factual materials supplied by the movant, but not pled in the
complaint, is improper under Rule 12(b)(6) without conversion of the motion into one for
summary judgment, courts may rely on such materials to ***deny*** the defendant's motion. *Cf.*
*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999).

is established.  This is certainly true when drawing all reasonable inferences from the facts

pleaded in the complaint in favor of the Plaintiff, as must be done on this motion to dismiss.[14]

None of the cases relied upon by the Hospital in its memorandum, including *Kolari v.*

*New York-Presbyterian Hosp.*, 382 F. Supp.2d 562, 568-69 (S.D.N.Y. 2005), and *Bleich v.*

*Revenue Maximization Group, Inc.*, 239 F. Supp.2d 262, 264 (E.D.N.Y. 2003), support the

Hospital's argument here that it is collecting its own debts when billing for its physicians.  This

is so because in those cases the hospitals sought to collect debts owed to the hospitals themselves

– not to their doctors or other health professionals, *Kolari*, 382 F. Supp.2d at 568-69; *Bleich*, 239

F. Supp.2d at 264.  In the instant case, the debts at issue are alleged to be owed to the

independent contractor doctors who provided the medical services to the patient being billed.

This critical distinction more than amply supports the Complaint's allegations, and the inferences

to be derived therefrom, that the hospital is a debt collector within the meaning of the FDCPA.

Furthermore, the Hospital's reliance upon *Carlson v. Long Island Jewish Medical Center*,

378 F.Supp. 2d 128 (E.D.N.Y. 2005), is misplaced for multiple reasons.  *First*, like *Kolari* and

*Bleich*, in *Carlson,* the hospital sought to collect debts owed to the hospital itself – not its doctors

or other health professionals.  378 F.Supp.2d at 132.  *Second*, *Carlson* dealt with the separate

rule – not pleaded here – that a creditor seeking to collect debts owed to it may not falsely create

the impression that the collection is being performed by a third party by employing a fictitious

name or pretending to be someone else.  *Id.*  *Finally*, *Carlson* actually supports the Plaintiff's

position here.  There, the motion to dismiss was denied because, as here, plaintiff's "theory turns

---

[14]    Moreover, the representation made by the Hospital itself in the Hospital/MultiPlan
agreement that its "officers, directors, employees and agents [] *act[ ] as [ ] independent
contractor[s],*" Parker Decl. Ex. D § E.1, belies Defendant's contention that its doctors are
reckoned as employees.

on facts that cannot be determined in the context of a motion to dismiss. Among those facts are the business of [doctors] and the nature of [their] relationship with the Hospital[]. It is also important to determine the nature of the contacts among the Hospital[], [doctors] and Plaintiff[]. It is only when these facts are clarified that the court will be in a position to determine whether the least sophisticated consumer would have believed that the Hospital[] or an unrelated third party was attempting to collect a debt." *Id.*[15]

Accordingly, for pleading purposes, and drawing all reasonable inferences in Plaintiff's favor, the Court should deny the motion to dismiss.

**C.    Plaintiff Was Not Required To Pay The Disputed Bill
Nor Complain To The Hospital Before Bringing Suit**

Contrary to Defendant's contention, the FDCPA has no pre-suit requirement that plaintiff pay the disputed bill or raise the issue of misbilling with the Hospital for her claim to accrue. This contention is merely a ploy to shift the blame for the Hospital's improper balance billing on the victims – Plaintiff and the class. However, the FDCPA is, in fact, a strict liability statute, placing the onus of any violation on the debt collector, not the debtor. Defendant's reliance upon the first *Bleich* decision is disingenuous. The subsequent *Bleich* decision, in reviewing its earlier decision, makes it abundantly clear that the earlier grant of ***summary judgment*** in the debt collector's favor was because, unlike here, its billings, in fact, "included appropriate language regarding the FDCPA debt validation procedure, . . . [thereby precluding] a lawsuit alleging fraudulent or deceptive practices in connection with the collection of a debt." 239 F. Supp.2d at

---

[15]     *Backuswalcott v. Common Ground Community HDFC, Inc.*, 104 F. Supp. 2d 363 (S.D.N.Y. 2000), also doesn't help Defendant. That case was resolved on summary judgment, after full discovery, on the grounds that the facts adduced from discovery indicated that the affiliate exception of 15 U.S.C. § 1692a(6)(B) applied. Such a conclusion here would be premature.

263.[16] In the instant case, even the Hospital doesn't contend that it included the debt validation procedure language required by 15 U.S.C. §1692g in the invoices it sent to Plaintiff and the class.

**D.    The Evidence Shows That The Physicians Are Independent Contractors**

Even if the Court considers the improper evidence submitted by the Defendant, the contention for which it is proffered fails. On its face, the Hospital/MultiPlan agreement expressly states that "Each party, including its officers, directors, employees and agents, *acts as an independent contractor*." Parker Decl. Ex. D § E.1. Moreover, as mentioned above, the explanations of benefits received from Assurant show that the doctors were paid in their own names, not in the name of the group alleged by Defendant to be the recipient of payment, and the tax numbers that Assurant associated with those claims are not the same tax number as that on the W-2s supplied by Defendant. See Exs. A-B to the Smilow Decl. and ¶¶ 7-9. Accordingly, there is – at the very least – a substantial question of fact presented, precluding dismissal.

**E.    The Complaint States A Claim For Violation Of
Section 349 Of The New York General Business Law**

Defendant substantively[17] challenges only one prong of Plaintiff's § 349 claim: that Plaintiff, in the Hospital's view, failed to allege injury separate from the deception of being billed

---

[16]    The debt validation procedures are required by 15 U.S.C. §1692g.

[17]    It is impossible to divine Defendant's contention that Plaintiff here cannot establish a § 349 material deception. *See* Def. Mem. at 21. Although Defendant seems to claim that an element of reliance must be pleaded such that she "bears the burden of showing 'materially deceptive conduct' on which she *relied* to her detriment, *id.* (emphasis added), the Court of Appeals has stated that reliance is not an element of § 349. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29-30 & n.1 (1999). (Interestingly, the *Bildstein* case relied upon by the Hospital cites to an earlier part of the *Stutman* case, which discusses, but ultimately rejects, the lower court's misinterpretation of a reliance requirement under § 349.) To the extent that Defendant argues that the Plaintiff must plead causation, *see Cox v. Microsoft Corp.*, Index No. 105193/2000, 2005 NY Slip Op 51968U, at *4 (N.Y.Co. July 29, 2005), this is satisfied here for the reasons stated in the text and in the Complaint.

for monies not owed. Defendant makes the incongruous argument that since (i) payment of a hidden credit card service charge on a foreign currency transaction and (ii) addictiveness of nicotine prevented purchasers of cigarettes from making free and informed choices as consumers do not constitute requisite injury under § 349, *Bildstein v. Mastercard Int'l Inc.*, 329 F. Supp.2d 410, 416 (S.D.N.Y. 2004); *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (N.Y. 1999), respectively, then the "injury" of being deceptively invoiced for charges that are not owed suffers from the same frailty. Def. Mem. at 17-21.

Not true. Unlike this case, the missing element of injury in *Bildstein* and *Small* is the fact that no injury is manifest when the alleged deception would not affect anyone's conduct or person. In *Bildstein* and *Small*, the plaintiff would have behaved the same way, or the event would have happened the same way, even if the allegedly misleading practice were disclosed because the plaintiff had not pleaded any alternative conduct that was foreclosed as a result of the wrongdoing. In other words, the *Bildstein* and *Small* plaintiffs would have done the same thing even if full disclosure was made. Here, however, if the 10% MultiPlan discount would have been properly disclosed in the invoices, reflecting the fact that the insurer made payment in full of the doctors' fees charged pursuant to the Hospital/MultiPlan agreement and patients were not responsible to pay out of their own pockets monies which the physicians and the Hospital contractually chose to waive, Plaintiff and the other class members would not have been overcharged, would have been correctly invoiced, would have paid the invoice and be done with it. As a result of the Hospital's deception – concealing the credit for the 10% MultiPlan discount and the inflation of the patient bills, however, Plaintiff was improperly invoiced for more money than was owed, giving rise to a harm that was adequately manifested.

The harm alleged here is analogous to that found sufficient in *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (N.Y. App. Div. 2d Dept. 2002). There, the Second Department noted that even the single receipt of an unwanted telephone solicitation or piece of junk mail resulting from a bank's deceptive sale of confidential customer information to third-party vendors satisfies the injury requirement of § 349. *Id.*, 293 A.D.2d at 599-600. Likewise, in *Emilio v. Robison Oil Corp.*, 28 A.D.3d 417, 418-19 (N.Y. App. Div. 2d Dept. 2006), the court held that unilaterally increasing the price of goods in the middle of the term of a fixed-price contract constitutes a deceptive practice with adequate injury.[18]

Moreover, the Complaint here avers that Plaintiff expended time and money to contest the overbilling by first calling and then writing the Hospital concerning the overbilling. Compl. ¶¶ 20, 22. That supplies sufficient additional injury under the GBL. In fact, *Bildstein*, the very case relied upon by Defendant, states that although "[a] plaintiff must prove 'actual' injury to recover under the statute, [he need] not necessarily [plead] pecuniary harm" (*quoting Stutman*, 95 N.Y.2d at 29.[19]

---

[18]    *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325-26 (N.Y. 2002), another case cited by the Hospital, also supports the alleged injury in this case. *Goshen* sustained a § 349 claim for New York plaintiffs solely because the deceiving "vanishing premium" concept was conceived and orchestrated prior to the transaction culminating in dissemination of the deceptive materials to potential consumers.

[19]    To discredit the Plaintiff's claim of injury deriving from the time and money spent to contest the Hospital's overbilling, Defendant selectively and misleadingly quotes *Trikas v. Universal Card Services Corp.*, 351 F. Supp.2d 37, 46 (E.D.N.Y. 2005), which actually based its dismissal of the § 349 claim on completely different grounds.

Because Plaintiff has failed to prove any harm, which precluded any recovery for *negligent* violation of the [Fair Credit Reporting Act], this claim must also be dismissed. *See Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1035-36 & n.3 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997) (*failure to show negligence defeats § 349 claim*). Additionally, Plaintiff has failed to adduce any

Accordingly, the Complaint states a valid claim for injury pursuant to section 349 of the General Business Law and, therefore, the motion to dismiss must be denied.

**F.    The Complaint States A Valid Breach Of Contract Claim**

Defendant mistakenly contends that since Plaintiff here did not allege actual payment of the overcharge she was invoiced by the Hospital,[20] she has not been damaged and cannot assert a breach of contract claim.[21]  Def. Mem. at 23-24.  Defendant's contention is incorrect.  *First*, a plaintiff's pleading of damages requires no more than alleging a "financial loss of any conceivable nature as a result of defendant's claimed breach of contract."  *Bogdan & Faist P.C. v. CAI Wireless Sys. Inc.*, 745 N.Y.S.2d 92, 96 (N.Y. App. Div. 3d Dept. 2002).  Thus, although the law is that a "suitor cannot recover damages for breach of a contract unless he has suffered them[, . . . t]his does not mean that the damages must have been paid.  It is sufficient that the liability exists."  *J. Harry McNally, Inc. v. State*, 11 N.Y.S.2d 577 (N.Y. Ct. Cl. 1939); *Weitzman v. Stein*, 459 F. Supp. 400, 403 (S.D.N.Y. 1978) ("at common law the wrongful imposition of

---

evidence of wilfulness, and it cannot be said that the Bank has engaged in "materially misleading or deceptive acts." *See Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 400 (S.D.N.Y. 2001).

351 F. Supp.2d at 46 (emphasis added).  In this case, Defendant's negligence is not and has not been raised as an issue.  *See* Smilow Decl. Exs. A-B.  As for the Hospital's unsupported policy argument that time, money and effort spent contesting overbilling should be rejected because, in its view, it would defeat the element of harm required under § 349, it is contrary to the very purpose of § 349 and, in any event, was implicitly rejected by the *Smith* and *Emilio* cases discussed in the text – which required no action on the Plaintiff's part.

[20]    For the reasons stated above, Defendant's submission of extraneous materials concerning payment of the Hospital's overcharges is improper on this motion to dismiss.

[21]    All but  two of the authorities relied upon by the Defendant to support its contention are inapposite because they involved a motion for summary judgment, unlike this case which involves a motion to dismiss.

liability to a third person has long been considered actual damage even while the liability remains unsatisfied"); *cf. County of Nassau v. Flushing Ultrasound, Inc.*, 1 A.D.3d 557, 558 (N.Y. App. Div. 2d Dept. 2003) (breach of insurance contract claim proper even when statutorily obligated to defend and indemnify) (emphasis added). Accordingly, since, by virtue of the Hospital's overbilling, Plaintiff is on the hook for the amount of the overbilling and will suffer damages in that amount unless the Court declares it unlawful, legal damages for the breach of contract claim is stated. *A fortiori*, the class members that paid the amounts overbilled by the Hospital have damages for the amounts overpaid.

*Second*, the complaint states a valid breach of contract claim to the extent it seeks a declaratory judgment that Defendant breached the Hospital/MultiPlan agreement and, therefore, Plaintiff and the class are not obligated to pay what has been overcharged. *See Ad Damnum* clause.

*Third*, because the Plaintiff here has alleged a clear breach of the Hospital/MultiPlan agreement, "there is a remedy against the party breaching it, as a cause of action for at least nominal damages aris[ing] upon the breach of a contract." *Kronos Inc. v. AVX Corp.*, 581 N.Y.S.2d 942, 943 (N.Y. App. Div. 4th Dept. 1992), *rev'd on other grounds*, 81 N.Y.2d 90 (1993).

*Fourth*, Plaintiff's failure to pay the overcharges here does not negate her damages because she is still entitled to punitive damages due to the gross, morally reprehensible and wanton dishonesty latent in the Hospital's conduct alleged here. *See NYU v. Continental Ins. Co.*, 87 N.Y.2d 308, 315-16 (N.Y. 1995).

21

*Fifth*, as to those members of the class who have not yet paid their outstanding balances, New York law recognizes the remedy of specific performance as an alternative measure of damages where, as the case is here, specific performance is appropriate. *See Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82, 85 (2d Cir. 1992) (specific performance, actual damages and liquidated damages are some of the alternative remedies available for breach of contract).[22] Under established New York law, a plaintiff seeking specific performance must plead: (1) a valid contract; (2) plaintiff's substantial performance and willingness and ability to perform the remaining obligations; (3) defendant's ability to perform its obligations; and (4) plaintiff's lack of an adequate remedy at law. *See generally Laurus Master Fund, Ltd. v. Versacom Int'l, Inc.*, 2003 U.S. Dist. LEXIS 8480, at *7-8 (S.D.N.Y. May 22, 2003). "The decision whether or not to award specific performance is one that rests in the sound discretion of the trial court." *Sokoloff v. Harriman Estates Development Corp.*, 96 N.Y.2d 409, 415 (N.Y. 2001).

In this case, which is at the pleading stage, there can be no doubt that: (i) the Hospital/MultiPlan agreement is adequately alleged to be a valid contract; (ii) Plaintiff and the class are third-party beneficiaries under that contract; (iii) Plaintiff and the class have at least substantially performed their obligations under the contract and remain willing and able to perform their remaining obligations under the contract – *i.e.*, those that have not paid their bills are prepared to pay the amounts truly owing, after credit for the 10% MultiPlan discount; (iv) the Hospital can easily perform its duties by correcting its overbilling through notification to Plaintiff

---

[22]    As the court in *Hunts Point Realty Corp. v. Pacifico*, 847 N.Y.S.2d 902 (Sup. Ct. Nassau Co. 2007), recognized, the requirement of damages to redress a breach of contract is designed to compensate a plaintiff for breach of contract *if* damage results from the breach (*citing Brushton-Moira Central School District v. Fred A. Thomas Associates*, 91 N.Y.2d 256, 261 (N.Y. 1998)( "It has long been recognized that the theory underlying damages is to make good or replace the loss caused by the breach of contract")).

22

and the class that the bills it previously sent them were incorrect insofar as they failed to credit the patients' accounts for the 10% MultiPlan discount and the new bills to be sent make that correction; and (v) by refunding any overpayments made by class members who, before learning of the Hospital's overbilling, paid the amount of their bill that should have been credited.

Moreover, for pleading purposes, Plaintiff has adequately pled that she and the class she seeks to represent have no adequate remedy at law. This is so because Plaintiff and the class are at the Hospital's mercy concerning the calculation of the proper amount to be discounted and the correlative amount to be balance billed. In addition, Plaintiff and the class have no adequate remedy at law because, if the court were not to direct specific performance here, the Defendant would unjustly circumvent a clear unequivocal obligation that would otherwise work to plaintiff's benefit and for which accurate damages cannot be awarded. "A court should not allow a [breaching party the] freedom to accept or reject a contract such as this upon whim. It is a well-known maxim of the law that a person should not be permitted to profit by her own wrong." *Bregman v. Meehan*, 479 N.Y.S.2d 422, 433 (Sup. Ct., Nassau Co. 1984) (*citing Simon v. Etgen*, 213 N.Y. 589, 600 (N.Y. 1915)); *see also Spoolan Realty Corp. v. Haebler*, 147 Misc. 9, 10, 262 N.Y.S. 197, 198 (Sup. Ct. Bronx Co. 1931). *See generally U.S. Fidelity and Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999); *Hadcock Motors, Inc. v. Metzger*, 459 N.Y.S.2d 634, 636-37 (N.Y. App. Div. 4th Dept. 1983).

Defendant's reliance upon *Trikas*, 351 F. Supp.2d at 46, is unavailing. That court's dismissal of the breach of contract claim was predicated on the fact that the only damages alleged there were punitive or mental distress/emotional damages, which are not available for breach of contract under New York law. *Id.* These are not the damages that have been alleged here.

Similarly, *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777 (N.Y. App. Div. 1st Dept.

1988), is inapposite because, unlike here, that complaint did not detail the alleged opportunity

cost lost by the breach, only the unsupported, conclusory allegation that it totaled $35 million.

Consequently, the complaint here adequately alleges a breach of contract and the

Defendant's motion to dismiss should, therefore, be denied.

### 1.  Plaintiff and the Class Have Standing Because They Are Intended Beneficiaries of the MultiPlan Agreement

Although a question of fact not properly addressed to the present motion, the MultiPlan

agreement itself belies Defendant's contention that Plaintiff and the class are not intended

beneficiaries. *First*, the Hospital's patients are identified as "Participants" in the agreement

itself. Parker Decl. Ex. D at 1. *Second*, the agreement expressly circumscribes the Hospital's

billing of these patient "Participants":

> Participant Billings.  Memorial agrees to bill the Participant for appropriate co-
> payments, deductibles, and coinsurance only in the amount of the difference
> between the amount due for covered services based on Appendix A, and the sum
> of the amounts paid by the Clients and any other payors. *Memorial shall not*
> *balance bill* or attempt to collect compensation from Participants in connection
> with services covered by Workers' Compensation programs, except as expressly
> permitted by law.  Memorial shall bill a Participant its usual and customary charge
> for non-covered services provided to a Participant.

Parker Decl. Ex. D ¶ C.5 (emphasis added).  Thus, the Hospital's insinuation that the 10%

MultiPlan discount is limited to the "Clients" is completely bereft of textual support. *See* Def.

Mem. at 25.  In fact, the agreement expressly represents that "Memorial shall not balance bill."

*Third*, the agreement repeats the limits to the Hospital's ability to bill for services – even

from the patient "Participants" – when it states further: "Memorial shall receive the negotiated

rates for all patient care rendered under the Agreement, less any negotiated volume discounts."

24

Parker Decl. Ex. D ¶ C.1. This clause further reinforces the contention that the Hospital seeks to recover from Plaintiff and the class more than the negotiated rates it is permitted to recover under the MultiPlan agreement.

*Finally*, the MultiPlan agreement does not contain a third-party beneficiary exclusionary clause with or without regard to the "Participants," which strongly implies – at the very least – that the Hospital's patients are, in fact, intended beneficiaries of the MultiPlan agreement.

Based upon all of the foregoing – *i.e.*, the "manifestation of the intention of the promisor and promisee" in the MultiPlan agreement, it is clear that the parties thereto intended to permit enforcement thereof by non-party, patient "Participants," for whose benefit many of the agreement's provisions were included. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 43-44, 45 (N.Y. 1985).[23] Contrary to the Hospital's contention, the patient "Participants" need ***not*** be the "only" party that can recover upon a breach, only an intended one. *Id.*

> **2.    The 10% MultiPlan Discount Applies in this Case Because Assurant, Consistent with the Hospital/ MultiPlan Agreement, Advised the Hospital that the Charges for these Doctors Were Being Disputed**

Although the Hospital claims that the 10% MultiPlan discount is inapplicable here because the Hospital, in its view, was not paid timely by Assurant, another contention improperly

---

[23]    The Hospital misplaces its reliance upon *Fourth Ocean*. That case was decided on summary judgment, after the discovery process revealed an absence of intended beneficiary status being conferred by the contract on the plaintiff there. *Fourth Ocean*, 66 N.Y.2d at 45-46; *see also Key International Mfg., Inc. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 456 (N.Y. App. Div. 2d Dept. 1988) (distinguishing *Fourth Ocean* for this reason). That is clearly not the case here. To the contrary, the instant case is analogous to the preceding discussion in *Fourth Ocean* recognizing that there is sufficient evidence of an intent to permit enforcement by the third party if the language of the contract fixes the rate or price at which the third party may obtain services or goods, 66 N.Y.2d at 45, which is precisely the case here.

raised at this stage of the litigation, the Hospital/MultiPlan agreement itself casts substantial

doubt on the veracity of this contention. This is so because the agreement supplied by the

Hospital expressly provides for a payment hold-back for disputed claims:

> Disputed Claims. In the event of a dispute between Memorial and a Client
> regarding billed amounts, payment due, Client shall have the right, upon written
> notification of MultiPlan and Memorial about the dispute within sixty days of the
> date payment was due, to withhold payment pending resolution of the dispute.

Parker Decl. Ex. C ¶ 4. Thus, the possibility that Assurant properly disputed the claim of the

doctors' charges in question here has not been negated by the Hospital, which accepted the

discounted payment without protest. If Memorial truly believed that the discount was

inapplicable, it should have insisted on payment in full from Assurant. This ground is sufficient

on its own to deny Defendant's motion to dismiss.

In addition, denial is appropriate because the fact is that Plaintiff's husband was informed

by Assurant during the period in question that Assurant had disputed the claims, *see* Kahaner

Aff. ¶¶ 2-5, and that Assurant had requested additional information from the Hospital concerning

these doctors' charges. Accordingly, it is impossible to determine without full discovery whether

the disputed claim provision was triggered and, therefore, that payment was not received timely.

Consequently, there is – at the very least – a substantial question of fact presented precluding

dismissal.

**G.    This Court Has Jurisdiction Over All Of The Claims
Asserted In The Complaint, Including The State Law
<u>Claims, Pursuant To The Class Action Fairness Act Of 2005</u>**

Contrary to the Defendant's contentions, this Court has original jurisdiction over all of

the claims asserted in the complaint – including the state law claims – pursuant to CAFA. This is

26

so because (1) Plaintiff's citizenship is different from that of the Hospital,[24] (2) the class consists of at least 100 members,[25] (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs,[26] and, as set forth below, (4) the statutory exceptions to CAFA are inapplicable here.

## 1.    CAFA's Local and Home State Exceptions Do Not Apply Here

Defendant's contention that the principal injuries in this case were suffered in New York is without merit. For the local controversy exception to apply, the principal "injuries suffered by the class must be limited to a particular state; it does not apply to cases in which the defendants engaged in conduct that could be alleged to have injured persons throughout the country or broadly throughout the several states." *Mattera*, 239 F.R.D. at 80. This rule is consistent with

---

[24]    CAFA requires only minimal diversity. 28 U.S.C. § 1332(d)(2)(A). Here, Plaintiff is a citizen of South Carolina, and Memorial, a New York not-for-profit corporation having its principal place of business in Manhattan, is a New York citizen. Compl. ¶¶ 3 - 4. *See* 28 U.S.C. § 1332(c) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

[25]    *See* 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiff alleges that "[t]he number of persons comprising the Class is greater than several thousand." Compl. ¶ 8. Courts look to the allegations of the complaint to determine satisfaction of the CAFA jurisdictional elements. *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007); *Estate of Pew v. Cardarelli*, 2006 U.S. Dist. LEXIS 89025 at **14-15 (N.D.N.Y. December 6, 2006) (looking to complaint to establish applicability of exceptions to CAFA jurisdiction).

[26]    *See* 28 U.S.C. §§ 1332(d)(2) & (6). Here, Plaintiff was overbilled in the amount of $1,677.00. Compl. ¶ 21. As stated above, since the Complaint alleges a class of several thousand, we may multiply that by the assumption that the other individuals of the class were overbilled in the same amount as the Plaintiff, if not more, which would yield that a class of less than 3,000 persons would exceed CAFA's $5 million jurisdictional amount. *See Frederico v. Home Depot*, 507 F.3d 188, 197-99 (3d Cir. 2007) (extrapolating allegations to establish CAFA's jurisdictional amount in controversy). Furthermore, the complaint here does not limit its damages to less than $5 million, which also supports a finding that the CAFA amount in controversy is satisfied. *Id.* To the extent the Defendant disagrees, it is its burden to prove to a legal certainty that the amount sought cannot exceed $5 million. *Id.* at 197.

the fact that the exceptions to CAFA jurisdiction are intended "to keep purely local matters and issues of particular state concern in the state courts." *Brook v. UnitedHealth Group, Inc.*, 2007 U.S. Dist. LEXIS 73640 at *7 (S.D.N.Y. Sept. 27, 2007) (*citing Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193 (11th Cir. 2007)).[27]

Here, the Complaint alleges that the Hospital improperly balance billed for the 10% MultiPlan discount amount to a class of current and former out-of-network patients dispersed throughout the United States. In fact, the named plaintiff herself is a resident of South Carolina. *See Brook*, 2007 U.S. Dist. LEXIS 73640, at *17 (local controversy exception inapplicable where culpable conduct adverse effects persons in other states).

Moreover, the Defendant has *not* and cannot sustain its burden of proving that at least two-thirds (or even one-third) of the class members in this case are New York citizens. In fact, the solitary case relied upon by the Hospital undermines this argument. Unlike *Mattera*, in which the court held it was "reasonably likely" that the super-majority of employees of New York-based radio stations are residents of New York because their duties demand that they live close to their place of employment, *Mattera*, 239 F.R.D. at 80, the same assumption regarding the class composition alleged in this case would be unreasonable. This is so for several reasons.

*First*, it is reasonable to infer that Memorial attracts many patients from the greater New York metropolitan area, which includes citizens of New Jersey and Connecticut at the very least.

---

[27]    The party seeking to avail itself of any of these exceptions bears the burden of proving its applicability. *Mattera v. Clear Channel Comm., Inc.*, 239 F.R.D. 70, 79-80 (S.D.N.Y. 2006).

*Second*, since the Hospital is one of the leading hospitals in the world in the field of cancer treatment, it is also reasonable to infer that citizens of many states in the Union - and internationally – will travel to be treated at the Hospital.

*Finally*, because the Complaint itself seeks redress for the out-of-network Plaintiff that sought treatment from the Hospital, it is reasonable to infer that the group of out-of-network patients most similar to the Plaintiff are most likely to be out-of-state or international residents. This is so because in-network patients are most likely to be residents of New York, which would be the home network for Memorial.

Accordingly, CAFA's local controversy exception does not apply here.

### 2. **The Discretionary Exception Does Not Apply Here**

The discretionary exception to CAFA jurisdiction does not apply here for the same reasons that the mandatory exceptions are inapplicable. First, Defendant does ***not*** and cannot demonstrate that at least one third of the members comprising the class are New York residents. Second, the claims asserted affect class members dispersed among a substantial number of States. Third, they involve interstate interests.

Further, although the Hospital and some of its patients are New York citizens, the legitimate state interest in safeguarding medical practitioners and/or patients does not bring this matter under the auspices of the discretionary exception. "Merely because an action involves medical practitioners or a State-regulated industry does not automatically transform it into one pertaining to a uniquely local controversy which affects one particular State, to the exclusion of others." *Brook*, 2007 U.S. Dist. LEXIS 73640, at *22-23. Accordingly, CAFA's discretionary exception does not apply here.

29

**H.    Even Without CAFA, The Court Should**
**Retain Supplemental Jurisdiction**

A district court has discretion to exercise supplemental jurisdiction over a plaintiff's state

law claims when they are so related to the claims on which original jurisdiction was based as to

constitute the same case or controversy. 28 U.S.C. § 1367(a). The district court *may* decline to

exercise supplemental jurisdiction over a claim under § 1367(c) if (1) the claim raises a novel or

complex issue of State law, (2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction, (3) the district court has dismissed all

claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). In the Second Circuit, the

discretion to dismiss supplemental jurisdiction claims is even narrower than under the former

doctrine of pendent jurisdiction. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140

F.3d 442, 446-48 (2d Cir. 1998), and cases cited therein.

In providing that a district court may decline to exercise jurisdiction, this subsection is

permissive rather than mandatory. *Valencia v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). The

court's discretion is "not boundless," *id.*, and involves the balancing of factors to be considered

under the pendent jurisdiction doctrine. *Carnegie-Mellon University v. Cahill*, 484 U.S. 343, 350

(1988). Presence of one of the factors pointing in the direction of declining jurisdiction, such as

dismissal of all Federal claims upon which supplemental jurisdiction for state claims was sought,

is not dispositive. *See Williams v. The Dow Chemical Company*, 326 F. Supp. 2d 443, 448-449

(S.D.N.Y. 2004). Indeed, where, as here, no novel issues of state law are involved, factors of

convenience and judicial economy favor retaining the case in the original forum. *Id.* at 448.

## V.   PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND

Assuming *arguendo* that the Court finds that Plaintiff's allegations are not sufficiently pleaded under Fed. R. Civ. P. 12(b)(6) – which Plaintiff believes would be inappropriate for the reasons stated above – Plaintiff respectfully requests the opportunity to file an amended complaint. In the preliminary stages of a lawsuit, particularly before discovery, the trial court should freely grant leave to amend the complaint under Fed. R. Civ. P. 15(a) ("leave [to amend] shall be freely given when justice so requires").[28]

## VI.   CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendant's motion to dismiss should be denied in its entirety.

Dated: April 18, 2008

Respectfully submitted,
WEISS & LURIE

By:     /s/ Joseph H. Weiss
Joseph H. Weiss (JW-4534)
Mark D. Smilow (MS-2809)
Ilya Nuzov (IN-1955)
551 Fifth Avenue
New York, New York 10176
(212) 682-3025

*Attorneys for Plaintiff*

---

[28]    *See Foman v. Davis*, 371 U.S. 178, 181 (1962); *Goldberg v. Meridor*, 567 F.2d 209, 213 (2d Cir. 1977) ("the undesirability of granting summary judgment to defendants in a stockholder's derivative suit before discovery has been completed. . . dictate[s] liberality in allowing such complaints to be amended to reflect facts already discovered"). While the decision whether to grant leave to amend rests within the sound discretion of the district court, *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), it is the usual practice upon granting a motion to dismiss to allow leave to replead. Indeed, refusal to grant leave must be based on solid ground. *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). "Leave to amend the complaint should be granted 'when a liberal reading gives any indication that a valid claim might be stated' if pled more adroitly." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citation omitted).