UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

HELEN S. KAHANER, for herself and
all others similarly situated,

                Plaintiff,        Case No.: 07 Civ. 9626 (NRB/KNF)

vs.

MEMORIAL SLOAN-KETTERING CANCER
CENTER,

                Defendant.
------------------------------------X

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Garfunkel, Wild & Travis, P.C.
*Attorneys for Memorial Sloan-Kettering Cancer Center*
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

Of Counsel:
   Leonard M. Rosenberg
   Philip C. Chronakis

889955v.5

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    POINT I

        PLAINTIFF'S FDCPA CLAIM SHOULD BE DISMISSED BECAUSE
        MSKCC IS NOT A "DEBT COLLECTOR" UNDER 15 U.S.C.
        § 1692A(6) ............................................................................................................3

    POINT II

        PLAINTIFF'S GENERAL BUSINESS LAW CLAIM SHOULD BE
        DISMISSED BECAUSE SHE HAS NOT ESTABLISHED ACTUAL
        HARM ....................................................................................................................7

    POINT III

        PLAINTIFF'S CONTRACT CLAIM SHOULD BE DISMISSED
        BECAUSE PLAINTIFF HAS NOT ALLEGED DAMAGES, DOES NOT
        HAVE THIRD-PARTY BENEFICIARY STATUS, AND CANNOT
        DEMONSTRATE BREACH .................................................................................9

        A.    Plaintiff Has Failed To Allege The Essential Element Of Damages ...........9

        B.    Plaintiff Has Failed To Demonstrate Third-Party Beneficiary
               Status ..........................................................................................................11

        C.    Plaintiff Cannot Demonstrate A Breach Of The MultiPlan
               Arrangement .............................................................................................11

CONCLUSION ...............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bildstein v. MasterCard Intern. Inc.*,
   329 F.Supp.2d 410 (S.D.N.Y. 2004)..................................................................................7, 8

*Bleich v. Revenue Maximization Group, Inc.*,
   239 F.Supp.2d 262 (E.D.N.Y. 2003) ...................................................................................6, 7

*Carlson v. Long Island Jewish Medical Center*,
   378 F.Supp.2d 128 (E.D.N.Y. 2005) .......................................................................................6

*Chateaugay v. LTV Corp.*,
   944 F.2d 997 (2d Cir. 1991)...................................................................................................10

*Kolari v. New York-Presbyterian Hosp.*,
   382 F.Supp.2d 562 (S.D.N.Y. 2005).......................................................................................6

*Trikas v. Universal Card Servs. Corp.*,
   351 F.Supp.2d 37 (E.D.N.Y. 2005) ......................................................................................10

**STATE CASES**

*Bogdan And Faist P.C. v. CAI Wireless Sys. Inc.*,
   745 N.Y.S.2d 92 (3d Dep't 2002)..........................................................................................10

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*,
   66 N.Y.2d 38 (1985) ..............................................................................................................11

*Kronos, Inc. v. AVX Corp.*,
   581 N.Y.S.2d 942 (4th Dep't 1992).......................................................................................10

*Milan Music, Inc. v. Emmel Comms. Booking, Inc.*,
   829 N.Y.S.2d 485 (1st Dep't 2007) .......................................................................................10

*Orville v. Newski, Inc.*,
   547 N.Y.S.2d 913 (3d Dep't 1989).........................................................................................9

*Smith v. Chase Manhattan Bank, USA*,
   741 N.Y.S.2d 100 (2d Dep't 2002).........................................................................................8

**FEDERAL STATUTES**

15 U.S.C. § 1692a(6) ......................................................................................................................3

## **PRELIMINARY STATEMENT**

In its moving papers, Memorial Sloan-Kettering Cancer Center ("MSKCC") demonstrated that Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), New York's General Business Law ("GBL"), and for breach of contract should be dismissed as a matter of law. The FDCPA does not apply to situations like this where a hospital collects on behalf of its employee physicians. This fact alone compels dismissal of Plaintiff's FDCPA claim. Likewise, Plaintiff's failure to allege actual damages mandates dismissal of her GBL claim. Finally, Plaintiff's lack of third-party beneficiary status as to MSKCC's contractual arrangement with MultiPlan, her inability to demonstrate a breach by MSKCC, and her failure to allege contractual damages all require dismissal of her contract claim.

Plaintiff's opposition papers do nothing to offset MSKCC's arguments that all three claims should be dismissed as a matter of law. Instead of demonstrating any legal merit to her ill-researched and hastily-filed claims, Plaintiff presents the Court with a series of distractions that do not address the dispositive legal issues on each claim.

For example, the dispositive issue on Plaintiff's FDCPA claim is whether the physicians who treated Plaintiff are MSKCC employees. Plaintiff never investigated this fact before filing a federal class action. Now faced with irrefutable proof that these physicians are indeed full-time MSKCC employees, Plaintiff presents the Court with red herring arguments regarding the invoice numbers on a bill, tax identification numbers, names on insurance company checks, and language in MSKCC's contract with a managed care agency. These issues have no bearing whatsoever on the crucial issue underlying the FDCPA claim: whether the physicians are MSKCC employees.

As demonstrated in MSKCC's moving papers and again herein, the four physicians who treated Plaintiff at MSKCC are full time employees of MSKCC, compensated solely by

1

889955v.5

MSKCC. These physicians do not bill MSKCC's patients for their services, and do not receive payments from patients or insurance companies for their services. Rather, MSKCC's Physician Billing Department handles all billing and collections for the services provided by MSKCC's physicians. Accordingly, MSKCC billed Plaintiff to collect for services provided by MSKCC's physician employees. MSKCC never, as Plaintiff contends, acted as a debt collector for independent contractor physicians. MSKCC is a world renowned cancer treatment and research center, not a collection agency.

Plaintiff also attempts to save her contract claim from dismissal by recasting this action as a "balance billing" dispute. Citing language out of context from an agreement to which she is not a party, Plaintiff now frivolously contends that MSKCC impermissibly billed her for the balance of her account remaining after her insurance payments were posted. This action does not center around a breach of contract claim related to balance billing. Rather, this action comprises an FDCPA claim and GBL claim, with an accompanying third-party beneficiary contract claim. Plaintiff's attempt to highlight and reclassify her contract claim simply underscores the lack of merit in her FDCPA and GBL claims.

Perhaps arguments of this caliber are to be expected from a party who initiated a federal class action over a $1,600 billing discrepancy without first paying or disputing her bill, or researching the underlying factual or legal issues. Indeed, the attorney affidavit accompanying Plaintiff's opposition papers concedes that the first factual investigation done in support of this action took place nearly five months after Plaintiff commenced this litigation.

For these reasons, set forth more fully herein and in MSKCC's moving papers, each of Plaintiff's three claims against MSKCC should be dismissed as a matter of law.

# ARGUMENT

## POINT I

### PLAINTIFF'S FDCPA CLAIM SHOULD BE DISMISSED BECAUSE MSKCC IS NOT A "DEBT COLLECTOR" UNDER 15 U.S.C. § 1692A(6)

A creditor collecting bills on its own behalf is not a "debt collector" subject to the FDCPA. Thus, the dispositive issue on Plaintiff's FDCPA claim is whether the physicians who treated Plaintiff were employees of MSKCC, or whether MSKCC sought to collect their debts as a third party. Plaintiff claims that a "least sophisticated consumer" would reasonably conclude that MSKCC was collecting debts for a third party, and that the physicians who treated her at MSKCC were independent contractors rather than employees. *Opp. Br.* at 14, 17. Both allegations are plainly belied by documents and information referenced in Plaintiff's Complaint.[1]

Plaintiff's claim that MSKCC was billing as a third party on behalf of the physicians, simply because the bills came from the "Physician Billing Department" and consisted of bills for "physician services," is specious. *See id.* at 14. MSKCC has a Physician Billing Department that renders bills on behalf of MSKCC's physician employees and its physician groups. *See Reply Declaration of Roger Parker*, dated May 15, 2008 ("*Parker Reply Decl.*"), at ¶ 6. Based

---

[1] Plaintiff takes issue with MSKCC's inclusion of hospital bills, the MultiPlan Arrangement, and the physician W-2s in its motion to dismiss. *Opp. Br.* at 10-13. A party seeking dismissal under F.R.C.P. 12(b)(6) may rely not only upon assertions made in the complaint, "but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). In her Complaint, Plaintiff referred both to the MultiPlan Arrangement and to numerous bills that she received from MSKCC. Compl. at ¶ 19. Therefore, those documents are properly relied upon in this motion.

Furthermore, Plaintiff brought this lawsuit having performed no research regarding the veracity of her claims. The physicians' W-2s demonstrate clearly that this action is wholly without merit, and could have been easily avoided had Plaintiff merely inquired further. As Plaintiff alleges repeatedly in her Complaint that the physicians are independent contractors of MSKCC, the W-2s are a proper response to such a patently incorrect, and easily remedied, proposition. The W-2s are properly relied upon given their clear and dispositive nature regarding Plaintiff's allegations that the physicians are independent contractors. Whether the Court decides to dispose of Plaintiff's claims through a motion to dismiss or a motion for summary judgment, the evidence presented to date demonstrates that Plaintiff's claims should be dismissed as a matter of law. The Court should not allow Plaintiff to pervert the Federal Rules of Civil Procedure into a shield used to perpetuate a frivolous litigation premised upon demonstrably false legal and factual assertions.

3

on billing protocols established by Medicare (known colloquially as Part A and Part B), MSKCC follows the same billing conventions with private insurance companies and managed care plans, and bills payors for hospital services and physician services separately. *Id.* at ¶ 8. MSKCC's mere adherence to Medicare's billing requirements cannot subject it to the FDCPA.

Further, each MSKCC physician's services are billed out under a separate invoice number because each physician is a member of a separate physician group (depending on that physician's specialty). Each physician group is given a separate claim number as part of standard hospital-physician billing practices. *See id.* at ¶ 19. Although Plaintiff alleges that the separate invoice numbers are relevant (*Opp. Br.* at 14), she has failed to explain why they lead to the conclusion that MSKCC was acting as a debt collector by billing her for services she received at MSKCC, provided by employees of MSKCC. Following Plaintiff's reasoning, one would also conclude that when a law firm sends its client a bill for its lawyers' services, and the lawyers' names are identified, the law firm is acting as a collection agency for unaffiliated lawyers. Plaintiff's argument on this point defies both logic and common sense.

With no basis to support her allegation, Plaintiff continues to insist that the physicians who treated her were independent contractors of MSKCC, despite MSKCC's sworn statements to the contrary. *See Declaration of Roger Parker in Support of Defendant's Motion to Dismiss the Complaint*, dated February 29, 2008, at ¶ 13. Plaintiff's clearly frivolous argument is now further belied by sworn statements of each of the four MSKCC physicians who treated Plaintiff. *See Affidavit of Paul H. Dalecki, M.D.*, dated May 15, 2008, at ¶ 3; *Affidavit of Harry W. Herr, M.D.*, dated May 15, 2008, at ¶ 3; *Affidavit of Samson W. Fine, M.D.*, dated May 14, 2008, at ¶ 3; *Affidavit of Robert T. Heelan, M.D.*, dated May 15, 2008, at ¶ 3. These additional sworn statements definitively establish that the physicians at issue are MSKCC employees.

4

889955v.5

In blind defiance of the facts, Plaintiff looks to (and misinterprets) language in the MultiPlan Arrangement, of all places, to glean MSKCC's employment relationship with its own physicians. Common sense would dictate that the Multiplan Arrangement defines MSKCC's relationship with MultiPlan, not with MSKCC's physicians. Nevertheless, Plaintiff cites to a provision in the MultiPlan Arrangement whereby "[e]ach party, including its officers, directors, employees and agents, acts as an independent contractor." *Opp. Br.* at 17. Plaintiff's interpretation of this provision as proof of the physicians' employment status with MSKCC demonstrates the utter lack of merit to that claim. The plain meaning of such language is that each party (MSKCC and MultiPlan) is an independent contractor *as to each other*. MSKCC's agreement with MultiPlan obviously does not define MSKCC's employment relationship with its own physicians. Plaintiff's reliance on the MultiPlan Arrangement to demonstrate MSKCC's physicians' employment status is grossly frivolous.

Furthermore, Plaintiff argues that Assurant payments, made to MSKCC in the physicians' names, prove that the physicians were independent contractors. *Opp. Br.* at 17. The form of Assurant's payments has no bearing on the physicians' employment status at MSKCC. Certain payors send MSKCC reimbursement checks made out to individual physicians. *Parker Reply Decl.* at ¶ 21. However, these payments are never received by the MSKCC physicians. Rather, they are deposited directly into MSKCC's group account. *See id.* at ¶¶ 21-22.

Finally, Plaintiff speculates whether MSKCC's physicians were independent contractors because Assurant processed the physicians' claims under different taxpayer identification numbers ("TINs") from the MSKCC TIN indicated on the physicians' W-2s. *Opp. Br.* at 17. This conjecture is readily refuted. MSKCC's physician groups (*e.g.*, radiology, pathology,

anesthesiology) are MSKCC corporate entities, each with a separate TIN.[2] *Parker Reply Decl.* at ¶ 12. Through an exemption from the Internal Revenue Service, MSKCC is permitted to file W-2s for the physician employees from the various groups under a single tax identification number. *Id.* Thus, each group is billed under a separate number, distinct from the numbers assigned to other groups as well as the number appearing on the physicians' W-2s. Since each of Plaintiff's physicians practices in a different physician group, each is billed out under a separate TIN. *See id.* at ¶¶ 4, 13. But these numbers have no bearing on who receives the insurance payments. All monies go to MSKCC. *See id.* at ¶ 13.

Plaintiff's claim that MSKCC is a debt collector is supported by neither the documents and information referenced in Plaintiff's Complaint, nor the case law interpreting the FDCPA. In its original brief, MSKCC cited *Kolari v. New York-Presbyterian Hosp.*, 382 F.Supp.2d 562 (S.D.N.Y. 2005), *Carlson v. Long Island Jewish Medical Center*, 378 F.Supp.2d 128 (E.D.N.Y. 2005), and *Bleich v. Revenue Maximization Group, Inc.*, 239 F.Supp.2d 262 (E.D.N.Y. 2003) to prove that hospitals billing on their own behalf are not debt collectors under the FDCPA. *Def. Br.* at 11-13. Plaintiff attempts to differentiate these cases by emphasizing that the hospitals in those cases were collecting debts "owed to the hospitals themselves." *Opp. Br.* at 15. This is not disputed; the cited cases are relevant precisely because MSKCC is *also* collecting debts owed to itself. Therefore, Plaintiff cannot differentiate those cases from the one at bar.

The physicians who treated Plaintiff are clearly MSKCC employees. MSKCC acted to collect a debt on behalf of its employees, with all monies paid to MSKCC. An entity is not subject to the FDCPA when collecting debts for its employees. Accordingly, the Court should dismiss Plaintiff's FDCPA claim with prejudice.

---

[2] Notably, a tax identification number is associated with a corporate entity (an MSKCC physician group) and not, as Plaintiff suggests, an individual physician. Individuals do not have tax identification numbers.

## POINT II

## PLAINTIFF'S GENERAL BUSINESS LAW CLAIM SHOULD BE DISMISSED BECAUSE SHE HAS NOT ESTABLISHED ACTUAL HARM

Plaintiff contends that the alleged "injury" of being incorrectly invoiced is sufficient to sustain a cause of action under the GBL. *Opp. Br.* at 18. However, as explained in MSKCC's moving papers, Plaintiff conflates the alleged deception with the supposed injury, and fails to articulate any separate harm. Accordingly, Plaintiff's GBL claim should be dismissed.

Plaintiff's "changed behavior" theory, suggesting that MSKCC's alleged deception somehow affected her conduct, is trumped by this Court's holding in *Bildstein v. MasterCard Intern. Inc.*, 329 F.Supp.2d 410 (S.D.N.Y. 2004). Plaintiff argues that *Bildstein* is not applicable because of that plaintiff's failure to demonstrate that his behavior was impacted by the alleged misrepresentation. *Opp. Br.* at 18. Like the plaintiff in *Bildstein*, Plaintiff has failed to demonstrate how her behavior was affected by MSKCC's alleged deception.[3]

The *Bildstein* Court rejected a GBL claim because the plaintiff failed to allege that, had a hidden fee been disclosed, he would not have utilized the charged-for service. *Bildstein*, 239 F.Supp.2d at 414. Notably, Plaintiff avoids alleging that, had she known that MSKCC would bill for a larger balance, she would not have procured treatment there. She has not claimed that a cost comparison between different providers was a factor in her decision of where to receive care. Plaintiff merely claims that her receipt of MSKCC's bill forced her to inquire about the

---

[3] Plaintiff also challenges MSKCC's citation to *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43 (1999), by stating that the plaintiffs in *Small* failed because they "would have behaved the same way...even if the allegedly misleading practice were disclosed because [they] had not pleaded any alternative conduct that was foreclosed as a result of the wrongdoing." *Opp. Br.* at 18. In fact, the plaintiffs in *Small* specifically pled that, had the addictive nature of nicotine been disclosed, they would not have purchased cigarettes, but this argument was rejected by the court as an insufficient allegation of injury. *See Small*, 94 N.Y.2d at 56. If this argument was insufficient, then Plaintiff's argument, that she was forced to contest an incorrect bill, is certainly insufficient to state a claim under the GBL.

7

bill, whereas if the bill had been correct she would have simply paid it. *Opp. Br.* at 18-19. This does not constitute "changed behavior" or actual injury under *Bildstein*.

Plaintiff attempts to bolster her allegation of harm by misrepresenting the holding in *Smith v. Chase Manhattan Bank, USA*, 741 N.Y.S.2d 100 (2d Dep't 2002). Plaintiff argues that *Smith* holds that "even the single receipt of an unwanted telephone solicitation or a piece of junk mail resulting from a bank's deceptive sale of confidential customer information to third-party vendors satisfies the injury requirement of § 349." *Opp. Br.* at 19. Plaintiff's description is the exact opposite of *Smith*'s holding. Noting that plaintiffs did not allege that receiving such offers caused harm, the *Smith* court stated that "the 'harm' at the heart of this purported class action, is that class members were merely offered products and services which they were free to decline. *This does not qualify as actual harm.*" *Smith*, 741 N.Y.S.2d at 102 (emphasis added). Therefore Plaintiff's reliance on *Smith* is drastically misplaced.[4]

Finally, Plaintiff asserts that she "expended time and money to contest the overbilling," (*Opp. Br.* at 19). This is false. Plaintiff's sole action to contest the bill was her commencement of this suit. While Plaintiff alleges that she (or her husband) called and wrote MSKCC requesting more information on her account, she never alleges that she challenged the bill or sought a balance adjustment from MSKCC. *See* Compl. at ¶¶ 20, 22. Indeed, Plaintiff's counsel admits that he – not Plaintiff – called Assurant to investigate the billing issues five months after filing this Complaint. *See Declaration of Mark D. Smilow in Opposition to Defendant's Motion to Dismiss,* dated April 16, 2008, at ¶ 9. In any event, merely contesting an allegedly incorrect

---

[4] Plaintiff also relies upon *Emilio v. Robison Oil Corp.*, 28 A.D.3d 417, 813 N.Y.S.2d 465 (2d Dep't 2006) for the premise that "the act of unilaterally changing the price in the middle of the term of a fixed-price contract has been found to constitute a deceptive practice." *Id.* at 418. While this may be true, *Emilio* certainly does not stand for the premise that a plaintiff may succeed on such a claim without also establishing actual harm. Plaintiff states that *Emilio* held that such a price increase "constitutes a deceptive practice *with adequate injury.*" *Opp. Br.* at 19 (emphasis added). *Emilio* has no such finding, and does not discuss injury at all. Plaintiff again misrepresents a court's holding to support her own arguments.

8

bill does not constitute actionable harm under the GBL. Plaintiff's claim that she was harmed because she was deceived by receipt of an improper invoice is patently insufficient to sustain a claim under the GBL. Accordingly, this Court should dismiss Plaintiff's claim under GBL § 349 with prejudice.

### POINT III

### PLAINTIFF'S CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED DAMAGES, DOES NOT HAVE THIRD-PARTY BENEFICIARY STATUS, AND CANNOT DEMONSTRATE BREACH

In its moving papers, MSKCC demonstrated that Plaintiff's breach of contract claim should be dismissed because Plaintiff does not allege actual damages, does not have third-party beneficiary status to allege a breach of the MultiPlan Arrangement, and cannot demonstrate a breach of that agreement. *Def. Br.* at 23-28. As set forth below, Plaintiff's opposition papers do not provide the Court with any basis to preserve Plaintiff's legally defective contract claim. Accordingly, this claim should be dismissed as a matter of law.

### A.   Plaintiff Has Failed To Allege The Essential Element Of Damages

Plaintiff's failure to allege the essential element of damages compels dismissal of her breach of contract claim, despite her belated arguments regarding punitive damages and specific performance. Plaintiff first argues that, although she did not pay any of the MSKCC bills, her allegations of potential "liability" are sufficient. *Opp. Br.* at 20-21. This is a misstatement of law. Even if Plaintiff were billed incorrectly, that alone could not constitute actual damages. *See, e.g., Orville v. Newski, Inc.*, 547 N.Y.S.2d 913, 914 (3d Dep't 1989) (contract claim dismissed where plaintiff faced no liability stemming from alleged breach).

In her opposition papers, Plaintiff contends that she seeks specific performance on behalf of class members who have not yet paid their balances. *Opp. Br.* at 22. This contrived argument

9

889955v.5

cannot revive Plaintiff's defective contract claim. There can be no contractual "performance," specific or otherwise, when the only possible damages flowing from the Hospital's alleged failure to grant a 10% discount are monetary. *See, e.g., Chateaugay v. LTV Corp.*, 944 F.2d 997, 1007-08 (2d Cir. 1991) (specific performance claims are designed to protect interest in "unique property"). Moreover, there is no request for specific performance in Plaintiff's Complaint. Rule 15 – not Rule 12 – governs amendments to pleadings. Plaintiff's claims cannot be transformed in the middle of a motion to dismiss. Specific performance would have been unavailable to Plaintiff anyway, as she did not incur actual damages. *See Bogdan And Faist P.C. v. CAI Wireless Sys. Inc.*, 745 N.Y.S.2d 92, 96 (3d Dep't 2002) (request for specific performance does not relieve plaintiff from alleging actual damages). Plaintiff's analysis of case law on specific performance claims (*Opp. Br.* at 22-24) is thus inapposite.

Likewise, Plaintiff's focus on her request for declaratory judgment (*Opp. Br.* at 21), does not excuse her failure to allege actual damages. *See, e.g., Milan Music, Inc. v. Emmel Comms. Booking, Inc.*, 829 N.Y.S.2d 485, 486 (1st Dep't 2007). Plaintiff's reliance upon *Kronos, Inc. v. AVX Corp.*, 581 N.Y.S.2d 942 (4th Dep't 1992) (*Opp. Br.* at 21), is misplaced because the plaintiff therein had both plead and suffered actual damages. Plaintiff did neither.

Plaintiff also asserts that her punitive damages claim obviates the need to allege actual damages. *Opp. Br.* at 21. Plaintiff cannot recover punitive damages on a breach of contract claim. *Trikas v. Universal Card Servs. Corp.*, 351 F.Supp.2d 37, 46 (E.D.N.Y. 2005). Also, even if punitive damages were available, Plaintiff would still have to prove actual damages. *Id.* (punitive damage claim dismissed for failure to allege contract damages).

889955v.5

### B. Plaintiff Has Failed To Demonstrate Third-Party Beneficiary Status

As set forth in MSKCC's moving papers, Plaintiff is an incidental beneficiary, not an intended beneficiary of MSKCC's contractual arrangement with MultiPlan. *Def. Br.* at 24-26. Plaintiff's opposition papers do not credibly refute this point. Plaintiff merely alleges that MSKCC has an arrangement with MultiPlan, which has an agreement with Assurant, which provides Plaintiff with health insurance. *Opp. Br.* at 24-25. This attenuated relationship cannot establish the requisite proof that Plaintiff is the only party who can recover for breach. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45 (1985).

A litigant must demonstrate express contractual language may to establish third-party beneficiary standing. *Id.* There is no language in the MultiPlan Arrangement that clearly shows an intent to permit Plaintiff's enforcement. Plaintiff flips this test on its head by claiming that the lack of a third-party beneficiary exclusionary clause in the MultiPlan Arrangement "strongly implies" she that is an intended beneficiary. *Opp. Br.* at 25. There is no legal authority for Plaintiff's backwards analysis of New York contract law. Plaintiff is an incidental beneficiary – not an intended beneficiary – of the MultiPlan Arrangement and thus has no standing to sue MSKCC for the alleged breach of that agreement.

### C. Plaintiff Cannot Demonstrate A Breach Of The MultiPlan Arrangement

Plaintiff cannot show that the non-application of the 10% discount to Plaintiff's account constituted a breach of the MutliPlan Arrangement. Plaintiff claims she qualifies for the 10% discount because of the "possibility that Assurant properly disputed the claim" or because MSKCC accepted Assurant's late and incomplete payment "without protest." *Id.* at 26. Neither argument has merit. The MultiPlan Arrangement requires Assurant to pay a claim within 45 days of billing for the 10% discount to apply. *Def. Br.* at 4, 27. Assurant did not make a payment

11

until 90 to 120 days after receipt. *Id.* at 27. This condition precedent cannot be waived by imposing upon MSKCC an acceptance of payment "without protest." This provision is not part of the MultiPlan Arrangement, and would not make sense in any event, as the 45-day rule was for MSKCC's benefit, not Assurant's.

Plaintiff also attempts to recast this action into a "balance billing" dispute. *Id.* at 11, 16. Citing language out of context from an agreement to which she is not a party, Plaintiff contends that MSKCC impermissibly billed her for the balance of her account remaining after her insurance payments were posted. This is the type of argument that Rule 11 was created to deter. The contractual "balance billing" clause to which Plaintiff cites refers specifically and solely to Worker's Compensation claims. MSKCC – a world renowned cancer center – handles few, if any, Worker's Compensation claims. Plaintiff's treatment was not such a claim. Plaintiff's frivolous and obvious misreading of this contractual clause underscores the lack of merit in both her Complaint and her opposition papers. This action is not a breach of contract claim related to balance billing. Rather this action is an FDCPA and GBL claim accompanying a third-party beneficiary contract claim evidently filed without even a modicum of advance factual research that would have highlighted the various flaws in Plaintiff's claims.

## CONCLUSION[5]

For all of the reasons set forth above, and in MSKCC's moving papers, MSKCC respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.

---

[5] Plaintiff's sparse arguments regarding the Class Action Fairness Act are without merit and do not warrant additional response. MSKCC maintains that the dismissal of Plaintiff's FDCPA claim should lead to dismissal of Plaintiff's two state law claims for lack of federal subject matter jurisdiction.

Dated: Great Neck, New York
        May 16, 2008

                                        GARFUNKEL, WILD & TRAVIS, P.C.
*Attorneys for Defendant Memorial Sloan-Kettering Cancer Center*

By: _____
       Leonard M. Rosenberg (LR 6910)
       Philip C. Chronakis (PC 6714)

111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

13