GARFUNKEL, WILD & TRAVIS, P.C.
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200
*Attorneys for Defendant*
*Memorial Sloan-Kettering Cancer Center*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

HELEN S. KAHANER, for herself and all others similarly situated,

      Plaintiff,

vs.

MEMORIAL SLOAN-KETTERING CANCER CENTER,

      Defendant.

------------------------------------X

**REPLY DECLARATION OF ROGER PARKER IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Index No. 07 Civ. 9626 (NRB/KNF)

Roger Parker, pursuant to 28 U.S.C. § 1746, declares that:

1. I am the Senior Vice President and General Counsel of Memorial Sloan-Kettering Cancer Center ("MSKCC"), the Defendant in this action. I have personal knowledge of the facts set forth this Declaration, which I submit in further support of MSKCC's Motion to Dismiss Plaintiff's Complaint.

2. I previously submitted a Declaration dated February 29, 2008 in support of MSKCC's motion. The purpose of my reply declaration is to demonstrate that the allegations contained in Plaintiff's opposition papers, regarding MSKCC's billing and collection practices, are without factual or legal merit.

889652v.2

**MSKCC's Billing Practices**

3.  The four physicians who provided services to Plaintiff at MSKCC on March 9, 2007, Harry W. Herr, M.D., Paul H. Dalecki, M.D., Samson W. Fine, M.D., and Robert T. Heelan, M.D., are full-time salaried employees of MSKCC.

4.  Each of these physicians (and each MSKCC physician) is part of a MSKCC physician group. Dr. Heelan, a radiologist, is a member of MSKCC's Radiology Group. Dr. Herr, a urologist, is part of MSKCC's Urology Group. Likewise, Dr. Fine is part of MSKCC's Pathology Group, while Dr. Dalecki is a member of MSKCC's Anesthesiology Group.

5.  The various MSKCC physician groups are simply a means by which MSKCC organizes its many physician employees. Each physician group is a partnership wholly owned by MSKCC's controlling corporate entities. MSKCC's physician employees have no ownership interest in the MSKCC physician groups. Regardless of what physician group an individual physician belongs to, each MSKCC physician, including the four named above, are full time physician employees of MSKCC.

6.  MSKCC's Physician Billing Department ("PBD") renders bills on behalf of MSKCC's physician employees and its physician groups. These bills reflect MSKCC's efforts to collect for services that the physician employees provide to MSKCC patients such as Plaintiff. In this context, MSKCC acts as an accounts receivables department collecting accounts on its own behalf, and not as a collection agency collecting on behalf of a group of independent physicians, as Plaintiff suggests in her opposition papers.

889652v.2

7. Both the PBD and the MSKCC's physician groups are owned by MSKCC. The PBD only collects for the services of MSKCC's employee physicians and physician groups. Obviously, MSKCC's principal business is providing treatment for cancer patients, not the collection of debts.

8. While it is true that MSKCC bills its patients separately for physicians services and hospital services, this separate billing is required by both governmental and commercial insurance carriers pursuant to the distinct Medicare Part A and Part B regulations. Thus, MSKCC was required to send Plaintiff and Assurant the MSKCC Statement of Physician Services separate from an invoice for MSKCC's hospital services.

9. Lacking any evidence to support her assertions, Plaintiff would have the Court conclude that this mandated billing practice was actually an effort by MSKCC – a world renowned cancer treatment center – to instead act as a collection agency for unaffiliated physicians. That is, simply put, fiction.

10. MSKCC employs the physicians who provided services to Plaintiff. The invoices sent to Plaintiff for these services represent MSKCC's effort to collect for its employees' services. As noted in my prior Declaration, Plaintiff neither paid nor disputed MSKCC's invoice for the March 9, 2007 physician services. Instead, she commenced a federal class action litigation.

**MSKCC's Tax Identification Numbers**

11. Plaintiff's repeated references to the tax identifications numbers related to Assurant's partial payments on Plaintiff's account is nothing more than a distraction from the

889652v.2

relevant issues in this dispute. A tax identification number ("TIN") does not indicate whether a physician is a hospital employee. Indeed, a TIN is assigned to a corporate entity, not an individual.

12. In this case, the TINs associated with Assurant's partial payment on Plaintiff's account relate to the several MSKCC physician groups of which the four physicians are members (*i.e.*, pathology, anesthesiology, radiology, and urology). MSKCC began using separate TINs for physician billing over twenty years ago. MSKCC's physician groups' tax identification numbers are all related to MSKCC. Through an exemption from the Internal Revenue Service, MSKCC is permitted to file all employee W-2s for the MSKCC's physician employees from the various physician groups under a single MSKCC tax identification number.

13. This explains why Assurant's payments to four separate physician groups at MSKCC were posted under separate TINs, and why these numbers were different from the tax identification number appearing on the physicians' W-2s. Although each MSKCC physician group has its own TIN, these numbers have no bearing on who received the insurance payments on Plaintiff's account. All of these monies went directly to MSKCC.

14. Moreover, these TINs have no bearing on whether these four physicians are employees of MSKCC. While these physicians belong to different groups at MSKCC, depending on their specialty, and while these groups have separate TINs for organizational purposes, the fact remains that all of these physicians are full-time employees of MSKCC.

15. Thus, Plaintiff's specious argument that MSKCC's physicians billed under their own tax identification numbers is clearly erroneous.

16.     I have a harder time comprehending Plaintiff's claim that the tax identification number issue confused or deceived her, giving rise to her Fair Debt Collection Practices Act claim. The tax identification numbers that supposedly flummoxed Plaintiff into a state of litigation actually <u>do not appear</u> on the bills sent by MSKCC to Plaintiff, annexed hereto as Exhibit A, or on the explanation of benefit forms submitted by Assurant, annexed hereto as Exhibit B.

17.     Clearly, Plaintiff was unaware of the tax identification issue before she filed this action. Rather, months after this complaint was filed, Plaintiff's <u>attorney</u> belatedly investigated the facts of this case by calling Assurant on March 18, 2008, as he concedes in his affidavit submitted in opposition to MSKCC's motion. *See Affidavit of Mark D. Smilow in Opposition to Defendant's Motion to Dismiss*, dated April 16, 2008, at ¶ 9. This further demonstrates Plaintiff had no reasonable basis on which to commence this suit when it was filed.

### Statement of Services

18.     MSKCC's statement of physician services is a single bill, but contains a separate invoice number for each physician's service. *See* Exhibit A. Plaintiff myopically argues that this demonstrates that each physician was billing individually and separately for his services. This argument is completely belied by the fact that these "separate invoices" are all contained on a single MSKCC Statement of Physician Services with MSKCC's name and logo prominently featured on the statement. *See* Exhibit A. Any suggestion that the bill did not appear to be from MSKCC is disingenuous

19.     The statement that MSKCC sent to Plaintiff contains separate invoice numbers because each physician is a member of a separate MSKCC physician group. Each physician

889652v.2

group is given an individual number and a separate claim as part of standard hospital-physician billing. The various invoice numbers on a single bill have no legal significance and do not support Plaintiff's unfounded claim that MSKCC transformed itself from a cancer center to a collection agency to recover $4,448.14 from Plaintiff.

### Assurant's Payments to MSKCC

20.     Assurant made partial payment to MSKCC on Plaintiff's account through checks made out to the individual MSKCC physicians. *See* Exhibit B. Notwithstanding plaintiff's bald *ipse dixit* otherwise, checks written by an insurer using the names of individual physicians do not suggest, let alone prove, the MSKCC employment status of such physicians. MSKCC's Physician Billing Department has verified that Assurant's payments on Plaintiff's account went directly to MSKCC, not its employee physicians.

21.     In my experience, certain governmental and commercial payors send MSKCC reimbursement checks made out to individual physicians (as Assurant did in this case), while other payors make their checks out directly to MSKCC or a specific MSKCC physician group. Either way, all of these payments go directly to MSKCC.

22.     Even though Assurant elected to issue checks in these physicians' names, the checks went to a lockbox at MSKCC, and were never received or seen by the individual physicians. These funds were then deposited directly into MSKCC's group account. Thus, MSKCC was collecting monies for services provided by its physician employees, and was not acting as a debt collector subject to the FDCPA.

889652v.2

## Conclusion

23.	For the above reasons, as well as those set forth in my prior Declaration, MSKCC's original moving papers, and its accompanying Reply Memorandum of Law, MSKCC respectfully asks the Court to dismiss this action in its entirety with prejudice.

I declare under penalty of perjury that the foregoing is true and correct.

_____
ROGER PARKER

Sworn to before me this
15 day of May 2008

_____
NOTARY PUBLIC

MARILYN CHIBOWSKI
Notary Public, State of New York
No. 01CH5076602
Commissioned and Qualified
In Rockland County
Commission Ends 4/21/11

889652v.2